STATE of Maine

v.

Elaine HARNISCH.

Supreme Judicial Court of Maine.

Submitted March 18, 1992.

Decided April 13, 1992.

Michael Cantara, Dist. Atty., Alfred (David Gregory, of counsel), for plaintiff.

James Gregory Boulos, Biddeford, James P. Boone, Caron & Boone, Saco, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD and COLLINS, JJ.

CLIFFORD, Justice.

Elaine Harnisch appeals from a judgment of the Superior Court (York County, *Brodrick, J.*) affirming her conviction in the District Court (Biddeford, *Gaulin, J.*) of operating a motor vehicle while under the influence of intoxicating liquor or while having 0.08% or more by weight of alcohol in her blood. 29 M.R.S.A. § 1312–B (Pamph.1991). Harnisch contends that the trial court erred in allowing in evidence and considering the results of a blood-alcohol test performed during the course of her treatment at the hospital emergency room, and further erred in admitting in evidence certain testimony of the treating emergency room physician. We discern no reversible error and affirm the judgment.

On December 6, 1989, at about 5:30 p.m., Kathleen Campbell was driving on Route 9 in Kennebunk and observed a car traveling toward her. As it passed, she saw two children but could not see the driver. She noticed the car drift off the road and saw it strike a utility pole. When Campbell approached the car, she saw the two children and an adult, later identified as Harnisch, who was unconscious in the driver's seat.

Harnisch eventually regained consciousness and was taken to the Southern Maine Medical Center by ambulance. An EMT on the scene testified that as Harnisch spoke, there was a definite smell of alcohol on her breath. At the hospital, Harnisch was treated by Dr. Sarah Moore, an emergency room physician. Dr. Moore ordered a blood work-up to test for blood count, blood sugar, and blood-alcohol levels. The blood-alcohol test, revealing a blood-alcohol level of .22%, was admitted in evidence at trial over Harnisch's objection. Also over Harnisch's objection, Dr. Moore testified at trial concerning observations she made of Harnisch's condition, certain statements Harnisch made to her, and gave an opinion that Harnisch was intoxicated.

Officer Shawn Cavanaugh of the Kennebunk Police Department interviewed Harnisch at her home a few days after the accident. Harnisch admitted to drinking three White Russians before the accident, but insisted that they had not affected her driving.

At trial, Harnisch called an expert who testified that swabbing isopropanol[1] in the area where the blood was taken could affect the test and that the results should be reduced by approximately 16% because of the methods and equipment used in the testing. The court found Harnisch guilty and this appeal followed Harnisch's unsuccessful appeal to the Superior Court.

---

1. Testimony of the phlebotomist and lab technician established that Harnisch's skin was swabbed with isopropanol. The phlebotomist testified that, according to the procedures she followed, there was no way the swab interfered with the test.

## I.

Harnisch did not sign an implied consent form prior to her blood being tested for alcohol content. *See* 29 M.R.S.A. § 1312(8) (Pamph.1991). The test results, however, were not admitted in evidence pursuant to that section. Rather, the tests were administered as part of her hospital treatment, and the results were offered and admitted pursuant to 16 M.R.S.A. § 357 (Supp.1991). That section provides in pertinent part:

Notwithstanding this section, the result of a laboratory or any other test kept by a hospital or other medical facility, which reflects blood-alcohol concentration, shall not be excluded as evidence in a criminal or civil proceeding by reason of any claim of confidentiality or privilege and may be admitted provided that the result is relevant and reliable evidence if the proceeding is one in which the operator of a motor vehicle or watercraft is alleged to have operated under the influence of intoxicating liquor or drugs, and the court is satisfied that probable cause exists to believe that the operator committed the offense charged.

In admitting the test results, the District Court implicitly found the results to be relevant and reliable, and that probable cause existed to believe that Harnisch was operating under the influence of alcohol or with excessive alcohol in her blood. We review those implicit findings under a clear error standard. *See State v. Enggass*, 571 A.2d 823, 824 (Me.1990) (clear error standard used to review trial court's finding of probable cause in motion to suppress). While conceding the relevance of the results, Harnisch contends that there was insufficient probable cause to believe that she was operating under the influence.[2] Contrary to that contention, even excluding in its entirety the testimony of Dr. Moore (testimony that Harnisch contends is privileged and inadmissible), the

evidence showed that Harnisch's vehicle was being operated without a visible driver, the vehicle drifted off the road and crashed into a utility pole, Harnisch had a definite odor of alcohol on her breath, and she admitted to the investigating police officer that she had been drinking. There was ample evidence for the court to conclude that probable cause existed to believe Harnisch was driving while under the influence.

Harnisch also contends that the test results are unreliable and that they should have been excluded on that basis. We disagree. Testimony of the phlebotomist and the lab technician established the integrity of the blood-alcohol test. Harnisch's expert testified that the swabbing of the skin with isopropanol before taking blood might influence the results. That testimony, however, was strongly disputed by the phlebotomist and the court was not bound to accept it. *See Bartlett v. Lindahl*, 560 A.2d 563, 565 (Me.1989); *Thompson v. Johnson*, 270 A.2d 879, 881 (Me. 1970). Harnisch's expert stated that because of the method of testing and equipment used by the hospital, the results should be lowered by approximately 16%. Even accepting the testimony of Harnisch's expert, however, Harnisch's blood-alcohol level would have been .18%–.19%, more that twice the legal limit. Sitting as the trier of fact, the trial court could weigh all the testimony and conclude that the blood-alcohol test result was sufficiently reliable to be admitted under section 357.

## II.

Harnisch also contends that the testimony of Dr. Moore, the physician who treated her in the emergency room following the accident, was improperly admitted in evidence over Harnisch's claim of privilege. M.R.Evid. 503[3] provides generally

---

**2.** The language of section 357 "that probable cause *exists* to believe the operator" (emphasis added) committed the offense, makes clear that the probable cause is measured by the court at the time of trial. *See State v. Bento*, 600 A.2d 1094, 1096 (Me.1991).

**3.** M.R.Evid. 503 provides in pertinent part:

(4) A communication is "confidential" if not intended to be disclosed to third persons other than those present to further the interest of the patient in the consultation, examination, or interview, or persons reasonably necessary for the transmission of the communication, or persons who are participating in the

that "communications made for the purpose of diagnosis or treatment of [a patient's] physical, mental, or emotional condition, to a physician are privileged from disclosure." Harnisch contends that Dr. Moore's observations, as well as Harnisch's statements to her, fall within the definition of privileged communications. The State contends that Dr. Moore's observations of Harnisch are not communications within the meaning of physician-patient privilege, and, in any event, all of Dr. Moore's testimony was properly admitted pursuant to M.R.Evid. 503(e)(3)[4] because the physical or mental condition of Harnisch, i.e., her state of sobriety, was an element of her defense.

It is, however, unnecessary for us to determine whether Dr. Moore's testimony in whole or in part was subject to privilege, or was nevertheless admissible pursuant to M.R.Evid. 503(e)(3). . Our review of the record leads us to conclude that it is highly probable that her testimony did not affect the judgment, and that its admission, if error, was harmless. *See State v. True,* 438 A.2d 460, 467 (Me.1981). Dr. Moore's testimony was cumulative. Evidence from other witnesses established that Harnisch's vehicle was traveling on Route 9 without her appearing to be driving, that it drifted off the road and struck a utility pole, that there was a definite odor of alcohol on her breath, that she admitted to having three drinks prior to the accident, and that she had *at least* .18%–.19% by weight of alcohol in her blood while she was in the hospital following the accident. Dr. Moore's testimony added little to that evidence. If there was error in admitting her testimony, the error was harmless.

diagnosis and treatment under the direction of the physician or psychotherapist, including members of the patient's family.

. . . .

**(b) General Rule of Privilege.** A patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of diagnosis or treatment of his physical, mental or emotional condition, including alcohol or drug addiction, among himself, his physician or psychotherapist, and persons who are participating in the diagnosis or treatment under the direction of the physician

The entry is:

Judgment affirmed.

All concurring.

4. M.R.Evid. 503(e)(3) provides:

(3) *Condition an Element of Claim or Defense.* There is no privilege under this rule as to communications relevant to an issue of the physical, mental or emotional condition of the patient in any proceeding in which the condition of the patient is an element of the claim or defense of the patient, or of any party claiming, through a contract to which the patient is or was a party, or after the patient's death, in any proceeding in which any party puts the condition in issue.