2002 ME 93

**STATE of Maine**

v.

**Robert PINEO.**

**No. Cum–01–707.**

Supreme Judicial Court of Maine.

Argued: April 2, 2002.

Decided: June 7, 2002.

Stephanie Anderson, District Attorney, Julia Sheridan, Asst. Dist. Atty. (orally), Portland, for State.

Edmond Folsom, Esq. (orally), The Boulos Law Firm, Saco, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

CALKINS, J.

[¶ 1] Robert Pineo appeals from a judgment of conviction of two counts of aggravated assault (Class B), 17–A M.R.S.A. § 208 (1983), one count of aggravated OUI (Class C), 29–A M.R.S.A. § 2411(6) (Supp. 2001), and two counts of driving to endanger (Class E), *id.* § 2413 (1996), entered after a jury trial in Superior Court (Cumberland County, *Cole, J.*). Pineo challenges the admissibility of a blood-alcohol test and the imposition of multiple convictions and consecutive sentences. We modify the judgment to correct one minor error and affirm as modified.

## I. BACKGROUND

[¶ 2] On the night of August 21, 2000, Robert Pineo was driving on the wrong side of Broad Turn Road in Scarborough when his vehicle nearly collided with three other vehicles. He then drove his pick-up truck head-on into a car driven by Sarah Buckingham, causing injuries to her, including a broken wrist, and permanent injuries to her mother, Diane Buckingham.[1] Pineo's blood-alcohol level was 0.16%.

[¶ 3] Pineo waived indictment and was charged in a five-count information.[2] He filed a motion in limine to exclude the results of the blood-alcohol test. The court held a hearing on the motion immediately prior to trial. Department of Human Services chemist John Bangeman testified that he had performed the test on Pineo's blood using a gas chromatograph, as part of a series of tests of blood and breath samples and tests using certain controls. He noted some anomalies in the tests but opined that under DHS standards the anomalies were not scientifically significant; that his tests established the absence of contamination and the accuracy of the machine's ethyl alcohol measure-

---

1. Diane Buckingham's injuries included a shattered jaw, two shattered wrists, a leg broken in three places, loss of hearing, and permanently impaired vision. She was in an induced coma for several days and was hospitalized for six weeks. She had numerous surgeries and faces the prospect of several more. Because of multiple permanent disabilities, she may never be able to return to work.

2. Count 1 charged Pineo with aggravated assault by causing serious bodily injury to Diane Buckingham. Count 2 charged aggravated assault by causing serious bodily injury to Sarah Buckingham or by causing bodily injury with the use of a dangerous weapon, that is, a vehicle. Count 3 charged aggravated OUI by alleging operating under the influence or with a blood-alcohol level of 0.16% and causing serious bodily injury to Diane Buckingham or Sarah Buckingham. Count 4 alleged driving a motor vehicle in such a manner as to endanger Diane Buckingham or Sarah Buckingham or the property of either. Count 5 alleged driving a motor vehicle in such a manner as to endanger Elizabeth Pike or her property.

ment; and that he saw nothing that would affect the integrity of that measurement. Pineo's expert, chemist Patrick Demers, testified that the anomalies noted by Bangeman should have been a red flag requiring further investigation, because they could have been caused by a problem with the machine or by some outside contamination. He opined that Bangeman's test of Pineo's blood was scientifically unreliable.

[¶ 4] The court found that the test was sufficiently reliable to present to the jury and denied the motion in limine. At trial, the witnesses included Bangeman for the State and Demers for Pineo. The jury found Pineo guilty on all counts.

[¶ 5] Before sentencing, Pineo filed a motion to dismiss the aggravated OUI count and one driving to endanger count on double jeopardy grounds. The court denied the motion at the sentencing hearing.[3] The court sentenced Pineo to ten years imprisonment on the two aggravated assault counts, concurrent with each other; five years imprisonment on the aggravated OUI count, consecutive to the ten year sentence, and a license suspension of six years; and six months imprisonment on the driving to endanger counts, concurrent with the other sentences, and a license suspension of 180 days (consecutive to the six years). The court ordered the license suspensions to begin after the end of the period of incarceration. Pineo brought this appeal and sought leave to appeal his sentence, which the Sentence Review Panel denied.

## II. BLOOD–ALCOHOL TEST

 [¶ 6] "[B]lood alcohol test results are admissible unless unreliable." *State v. Poulin*, 1997 ME 160, ¶ 13, 697 A.2d 1276, 1279. The trial court's determination that the results of a blood-alcohol test are sufficiently reliable to be admitted in evidence is reviewed for clear error. *Id.; State v. Harnisch*, 607 A.2d 527, 529 (Me.1992). Once a foundational showing of reliability has been made, the accuracy and reliability of a test result are questions for the factfinder. *State v. Pike*, 632 A.2d 132, 133 (Me.1993); *State v. Pickering*, 462 A.2d 1151, 1156 (Me.1983). In making the initial reliability determination, the court can rely solely on the testimony of the State's chemist that the result was reliable, *State v. Kennedy*, 657 A.2d 773, 774 (Me.1995), and is free to reject the contrary testimony of the defendant's expert, *Harnisch*, 607 A.2d at 529. The reliability determination for blood-alcohol tests fits within the general standards for application of M.R. Evid. 702, under which the trial court must decide whether proffered expert testimony "is sufficiently reliable to be held relevant" and "will assist the trier of fact to understand the evidence or to determine a fact in issue." *State v. Williams*, 388 A.2d 500, 504 (Me.1978).

 [¶ 7] In light of these standards, the court did not clearly err in finding Pineo's blood test reliable. Bangeman testified that he performed the test according to DHS standards, just as he had done thousands of times before, and opined that the anomalies were not scientifically signif-

---

**3.** At the sentencing hearing, Pineo's criminal history was disclosed. He has a long string of drunk driving and driving to endanger convictions going back to the 1960s. In 1987 he was convicted of OUI, habitual offender, and three counts of aggravated assault arising from a motor vehicle accident with facts strikingly similar to the instant case. In the 1987 incident he caused an accident, resulting in serious injuries, when he crashed into a car containing a family of four while driving drunk on the wrong side of the road. The 1987 accident occurred while Pineo was out on bail having been charged with various driving offenses stemming from still another motor vehicle collision.

icant and the test was reliable.[4] Demers did not dispute Bangeman's compliance with DHS standards but contended that the anomalies made the test unreliable. The court was free to reject Demers's opinion or, at least, to conclude that the State had made a sufficient foundational showing of reliability, so that Demers' criticisms went to the weight, not the admissibility, of the evidence.

## III. DOUBLE JEOPARDY

■ [¶ 8] Pineo contends that the Double Jeopardy Clause of the Maine Constitution, Article I, Section 8, precludes his convictions for aggravated OUI and one count of driving to endanger when he was also convicted of aggravated assault for the same conduct, *viz.* drunkenly smashing his truck into the Buckinghams' car and causing serious injuries.

■ [¶ 9] As we have held numerous times, the right to be free from double jeopardy under the Maine Constitution is coextensive with the right under the U.S. Constitution. *E.g., State v. Jordan,* 1998 ME 174, ¶ 7, 716 A.2d 1004, 1005–06; *State v. Wilson,* 671 A.2d 958, 960 (Me.1996). The Maine courts apply the same test applied by the United States Supreme Court to determine whether two of-

fenses are the same for double jeopardy purposes: the same act can be punished under two different statutory provisions as long as a conviction under each provision requires proof of a factual element that the other does not. This test may be satisfied notwithstanding a substantial overlap in the proof offered to establish the crimes.

*State v. Davis,* 580 A.2d 163, 164 (Me.1990) (citations omitted); *accord United States v. Dixon,* 509 U.S. 688, 704, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993); *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932). Thus in *Davis,* and again in *State v. Poulliot,* 1999 ME 39, ¶ 11, 726 A.2d 210, 213, we held that the defendant could be convicted of both aggravated assault and attempted murder based on a single criminal act of shooting a victim. The same rule applies here: Pineo could be convicted of multiple crimes for the same act because aggravated assault, aggravated OUI, and driving to endanger each require proof of a factual element that the others do not. Aggravated assault[5] requires proof of intentional, knowing or reckless conduct which is not true for either aggravated OUI or driving to endanger; aggravated OUI[6] requires operating a motor vehicle while under the influence of intoxicants, an element not

---

4. Pineo did not object to Bangeman's testimony at trial, but the State concedes that the court's ruling on the motion in limine was sufficiently final that his objection was preserved for appeal. *See* M.R. Evid. 103(c).

5. Title 17–A M.R.S.A. § 208(1) provides in pertinent part:

A person is guilty of aggravated assault if he intentionally, knowingly, or recklessly causes:
 A. Serious bodily injury to another; or
 B. Bodily injury to another with use of a dangerous weapon ....

6. Title 29–A M.R.S.A. § 2411 provides in pertinent part:

1. **Offense.** A person commits OUI, which is a Class D crime unless otherwise provided, if that person operates a motor vehicle:
 A. While under the influence of intoxicants; or
 B. While having a blood-alcohol level of 0.08% or more.
 ....

6. **Aggravated punishment category.** An operator commits a Class C offense if the State pleads and proves that the operator, while operating a motor vehicle in violation of this section:
 A. In fact caused serious bodily injury ... to another person ....

required for either aggravated assault or driving to endanger; and driving to endanger[7] requires proof of operating a motor vehicle with criminal negligence in a manner endangering property or people, not required for either aggravated assault or aggravated OUI.

[¶ 10] Pineo admits that this conclusion is correct as a matter of federal constitutional law but argues that we recognized greater protections under the Maine Constitution in *State v. Robinson*, 1999 ME 86, ¶¶ 12–14, 730 A.2d 684, 687. Contrary to Pineo's contention, nothing in *Robinson* indicates that we intended to depart from our long-standing view that the Maine and United States Constitutions provide identical protections against double jeopardy. Pineo's multiple convictions did not violate the State or Federal Double Jeopardy Clause.

## IV. CONSECUTIVE SENTENCES

 [¶ 11] Pineo challenges the consecutive sentences he received on the aggravated assault and aggravated OUI counts. He does not argue that the court exceeded the bounds of its discretion because the seriousness of his criminal conduct and criminal record did not justify imposing consecutive sentences pursuant to 17–A M.R.S.A. § 1256(2)(D) (1983). That argument could be raised only in a sentence appeal pursuant to 15 M.R.S.A. § 2151 (Supp.2001). *See State v. Weeks*, 2000 ME 171, ¶ 11, 761 A.2d 44, 47. Instead, Pineo contends that the consecutive sentences

violated the specific prohibition of 17–A M.R.S.A. § 1256(3)(B) (1983). The imposition of consecutive sentences in violation of section 1256(3)(B) is an illegality that can be raised on direct appeal. *State v. Mahan*, 1998 ME 143, ¶¶ 1 n. 3, 8, 711 A.2d 1314, 1315–16.

[¶ 12] Section 1256(3) provides in pertinent part: "A defendant may not be sentenced to consecutive terms for crimes arising out of the same criminal episode when: ... B. One crime consists only of a conspiracy, attempt, solicitation or other form of preparation to commit, or facilitation of, the other ...." Pineo argues that his aggravated OUI facilitated his aggravated assaults against the Buckinghams because if he had not been driving drunk, he would not have crashed into their car and injured them.

 [¶ 13] Section 1256(3)(B), like its identical predecessor 17–A M.R.S.A. § 1155(5)(B) (Pamph.1978), was intended "to prevent consecutive sentences for offenses which were committed as a part of a single course of conduct during which there was *no substantial change in the nature of the criminal objective*. Thus we focus upon the purpose for which the defendant engaged in the criminal conduct." *State v. Bunker*, 436 A.2d 413, 419 (Me. 1981) (citation and internal quotation marks omitted). As the focus on criminal purpose might suggest, all of the caselaw discussing this provision has dealt with intentional crimes.[8] Pineo's crimes were

---

**7.** Title 29–A M.R.S.A. § 2413(1) provides in pertinent part: "A person commits a Class E crime if, with criminal negligence .... that person drives a motor vehicle in any place in a manner that endangers the property of another or a person ...."

**8.** *See State v. Mahan*, 1998 ME 143, ¶ 9, 711 A.2d 1314, 1317 (carrying concealed weapon did not facilitate criminal trespass, or vice versa); *State v. Fleming*, 644 A.2d 1034,

1035–36 (Me.1994) (attempted murder did not facilitate gross sexual assault); *State v. Tellier*, 580 A.2d 1333, 1335–36 (Me.1990) (kidnapping facilitated unlawful sexual contact but not aggravated assault); *State v. Walsh*, 558 A.2d 1184, 1188 (Me.1989) (terrorizing did not facilitate rape); *State v. Prentiss*, 557 A.2d 619, 621 (Me.1989) (burglary facilitated gross sexual misconduct; factors justifying consecutive sentence under section

not intentional; he had no criminal purpose. It follows that section 1256(3)(B) does not apply because Pineo cannot meet "the *Bunker* purpose test." *State v. Tellier*, 580 A.2d 1333, 1335 (Me.1990).

 [¶ 14] This interpretation of the statute is logical for at least two reasons. First, as a limitation on the otherwise wide discretion of the court to impose consecutive sentences in appropriate circumstances, section 1256(3)(B) should be interpreted narrowly. Second, in that section facilitation is listed along with conspiracy, attempt, solicitation, and other preparation—all specific-intent concepts to which the *Bunker* purpose test would always apply. In that context, it is illogical to apply a completely different test to a small subset of facilitation cases, especially since it is not clear to us, and Pineo does not explain, what that new test would be. In addition, we note that Pineo never raised his section 1256(3)(B) argument before the sentencing court, denying the court the opportunity to make factual findings on the facilitation issue. *Cf. State v. Fleming*, 644 A.2d 1034, 1035 (Me.1994) (upholding finding of no facilitation as not clearly erroneous).[9]

## V. STAY OF LICENSE SUSPENSION

 [¶ 15] The court stayed the suspension of Pineo's driver's license until he is released from prison. On appeal, Pineo and the State agree that the court lacked authority to stay the suspension. Pursuant to 29-A M.R.S.A. § 2434(4), (8) (1996), a license suspension begins immediately on announcement of sentence, except that the

court may stay it for up to four hours for reasonable cause. The Legislature has not yet given the court the authority to stay a license suspension to a later date when the defendant is sentenced to a significant period of incarceration. The stay authorized by 17-A M.R.S.A. § 1103(6) (Supp.2001), cited in the notice of suspension, applies only to persons convicted of drug trafficking, and no other statute authorizes the stay imposed by the court.

The entry is:

Judgment modified to delete stay of license suspension and, as modified, affirmed.

---

1256(2)(D) cannot trump prohibition of 1256(3)(B)); *State v. Winchenbach*, 501 A.2d 1282, 1287 (Me.1985) (burglarizing garage and stealing truck did not facilitate passing a roadblock and eluding an officer); *Bunker*, 436 A.2d at 419 (kidnapping facilitated rape and gross sexual misconduct).

9. Pineo does not argue that any of the other limitations on consecutive sentences in section 1256(3) apply, and on the facts of this case any such argument would be meritless.