STATE OF MAINE                          SUPERIOR COURT
PENOBSCOT, ss                           CIVIL ACTION
                                        DOCKET NO. AP-2004-23


RONALD L. KAIN                    )
                                  )
            Petitioner            )
                                  )
v.                                )         DECISION AND
                                  )         ORDER
SECRETARY OF STATE                )
                                  )
and                               )
                                  )
BUREAU OF MOTOR VEHICLES          )
                                  )
            Respondents           )

FILED & ENTERED
SUPERIOR COURT
JAN 3 1 2005
PENOBSCOT COUNTY

This matter is before the Court on appeal, pursuant to 5 M.R.S.A. §§11001-11008 (Supp. 2004), 29-A M.R.S.A. § 2485(5) (Supp. 2004) and Rule 80C of the Maine Rules of Civil Procedure, from a decision of the Respondents, Secretary of State and Bureau of Motor Vehicles (herein "**BMV**"), suspending the Petitioner's, Michael L. Kain, driver's license for two-years instead of just one year, pursuant to 29-A M.R.S.A. § 2457(2) (Supp. 2004). The Court affirms the decision. The Petitioner has also filed motions for this Court to modify the record and to take judicial notice. This Court denies the motion to modify the record, but grants the motion to take judicial notice.


## Background

On January 5, 2004, the Respondents issued the Petitioner a conditional driver's license that expired on January 5, 2005. On July 24, 2004, the Petitioner was stopped by Officer Steve Pelletier of the Maine State Police after he observed the Petitioner driving erratically. After observing the Petitioner's behavior, the officer arrested him for driving

1

under the influence and operating on a conditional license, which forbade driving with any alcohol in the blood. The Petitioner does not dispute that there was probable cause to believe that he was operating the vehicle with a conditional license and that he was operating the vehicle with any amount of alcohol in his blood.[1] Officer Pelletier brought the Petitioner to the police station to take an intoxilyzer test. He attempted to give the Petitioner five tests. The first test was invalid because of an insufficient sample, the second test was valid and showed a blood alcohol level of .185 and the third and fourth tests were invalid because of insufficient samples. When the officer attempted to give the Petitioner a fifth test[2], the Petitioner refused.

The BMV suspended the Petitioner's license for two years, pursuant to 29-A M.R.S.A. § 2547(2) (Supp. 2004), for refusing to submit to a test. The Petitioner appealed the suspension and a hearing was held on September 14. 2004. The Petitioner argued that he did not refuse to submit to a test and that the BMV erred in suspending his license for two years, pursuant to 29-A M.R.S.A. § 2457(2), instead of just one year, pursuant to 29-A M.R.S.A. § 2457(1). Office Pelletier testified that that he believed that the equipment was functioning adequately. The Petitioner testified that he had difficulty taking the tests, but that he did, in fact, refuse to take the fifth test. The hearing officer found that Officer Pelletier had properly administered the test, that the intoxilyzer had been duly maintained and calibrated and that there was not an evident problem with the testing equipment of procedure. The hearing officer also found that the three tests failed because of the Petitioner's actions and that the Petitioner had clearly refused to take the

---

[1] These are the two prerequisites for a duty to submit to a test to rise under 29-A M.R.S.A. § 2457(2) (Supp. 2004).

[2] In accordance with Department of Health and Human Services ("**DHHS**") regulations that require officers to obtain two separate breathe samples. DHS, 10-144 CMR Ch. 269.

fifth test. Finally, the hearing officer found that the Petitioner had not shown any evidence to prove that he could not physically take the fifth test. The hearing officer denied the petition. The Petitioner appealed the decision to this Court.

## DISCUSSION

### A. Standard of Review

The Court's review of an agency determination is very limited. Agency rulings may be reversed or modified on appeal only if the Court determines that they are: (1) in violation of constitutional or statutory provisions, (2) in excess of the statutory authority of the agency, (3) made upon unlawful procedure, (4) affected by bias or error of law, (5) unsupported by substantial evidence on the whole record or (6) arbitrary or capricious or characterized by abuse of discretion. 5 M.R.S.A § 11007(4)(C) (Supp. 2004).

The Court may not substitute its judgment for that of the agency merely because the evidence could give rise to more than one result. Dodd v. Sec'y of State, 526 A.2d 583, 584 (Me. 1987). "The burden of proof clearly rests with the party seeking to overturn the decision of an administrative agency." Seven Islands Land Co. v. Maine Land Use Regulation Comm'n., 450 A.2d 475, 479 (Me. 1982). In cases where conflicting evidence is presented, the Law Court has repeatedly held that such conflicts are for the fact finder to resolve. Bean v. Maine Unemployment Ins. Comm'n, 485 A.2d 630, 634 (Me. 1984).

### B. Applicable Law.

*1.     Petitioner's Motion to Modify Record*

The Petitioner has filed a motion for this Court to modify the record to include, "all court proceedings and holdings pertaining to the Petitioner's criminal action in Penobscot

Superior Court, Docket Number CR-2004-824, specifically to include the Superior Court's Order on the Petitioner's Motion in Liming dated August 16, 2004." The Order the Petitioner refers was issued after the BMV hearing, was agreed upon by the Petitioner and the State and stated that there could be no mention of an "alleged refusal to take a test on the ground that he did not refuse to take a test and in fact took a breath test with results."

The Respondents argue that the motion was untimely filed after the ten day deadline imposed by M.R. Civ. P. 80C(e) and argues that the failure constitutes, "a waiver of any right to the taking of additional evidence." M.R. Civ. P. 80C(e). The Petitioner correctly argues that Rule 80C(e) is not applicable, because he is asking the Court to modify the record in accordance with Rule 80C(f) and 5 M.R.S.A. § 11006(1) (Supp. 2004) and is not asking the Court to take additional evidence, pursuant to Rule 80C(e).

Rule 80C(f) requires a petitioner who, "believes that the record filed by the agency is incomplete or over-inclusive, [to] serve notice upon the agency within 10 days after the record is filed." The rule goes on to say that if the parties cannot, thereafter, agree, "the petitioner may request that the court modify the record." The record was filed on November 1, 2004 and the Petitioner served proper notice on the Respondents on November 2, 2004. The Petitioner has met the time requirements of Rule 80C(f).

However, 5 M.R.S.A. § 11006(1) limits this Court's review to the record, with only enumerated exceptions. The Petitioner has made it clear that he is asking this Court to only "recognize the existence of a prior proceeding in this matter [not] to take additional evidence." As a result, 5 M.R.S.A. § 11006(1)(B), which refers to the taking

of additional evidence, is not applicable. The remaining sections are also inapplicable here. See 5 M.R.S.A. § 11006(1)(A)(C)(D). The Petitioner's motion to modify the record must be denied.

2. *Motion to Take Judicial Notice*

The Petitioner is also asking this Court to take judicial notice of the motion in limine Order referenced above. Respondents argue that the ten-day time limit imposed by Rule 80C(e) prohibits the Petitioner from providing "additional evidence" and that the Petitioner has failed to meet the requirements of Maine Rule of Evidence 201. Rule 80C(e) is not applicable here, as the Petitioner is not seeking the taking of additional evidence, but is asking this Court to take judicial notice of the prior proceeding. Further, Maine Rule of Evidence 201(f) states that, "[j]udical notice may be taken at any stage of the proceeding." Therefore, the analysis needs to be focused on Rule 201.

Rule 201 states that a judicially noticed fact must, "not be subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned." M.R. Evid. 201(b). "A court *shall* take judicial notice if requested by a party and supplied with the necessary information." M.R. Evid. 201(d) (emphasis added).

Despite the Court's statutory limitation to review only the record, there is precedent for taking judicial notice in Rule 80C appeals. See e.g., Ayotte v. Maine, State Tax Assessor, YORSC-AP-2001-026 (Me. Super. Ct., Yor. Cty., November 13, 2001) (Brennan J.); Maine AFL-CIO v. Superintendent of Ins., KENSC-CV-1990-251 (Me. Super. Ct. Ken. Cty., October 17, 1990) (Alexander J.); Albert v. Comm. of Labor,

CUMSC-CV-1984-131 (Me. Super. Ct., Cum. Cty., November 1, 1985) (Werncik J.).
While these examples all deal with generally known facts, they also all show deference to
the agency in order to maintain the Court's limited review. Here, the Court will take
judicial notice of the Superior Court Order, but it will be given very limited effect. The
fact remains that the Order meets the requirement of Rule 201(b)(2) in that the Order is
capable of "accurate and ready determination." Further, the Petitioner has supplied the
Court with the necessary information, thus making judicial notice mandatory.

The Respondents' fear that the Petitioner is seeking a way around the Rule 80C
requirements for the taking of additional evidence is unfounded. This Court merely
acknowledges the fact that the State and the Petitioner agreed, in a criminal proceeding,
that the Petitioner did not refuse "to take a test and in fact took a test with result." The
probative value of this Order is extremely limited and does not add much, if anything, to
the Petitioner's appeal.[3]

3.      *29-A M.R.SA. § 2457 and the Definition of "a Test."*

The primary issue in this case is whether the Respondents properly found that the
Petitioner refused to submit to "a test" within the meaning of 29-A M.R.S.A. § 2457(2).
The statute imposes a two-year minimum suspension of a conditional license when there
is, "probable cause to believe that a person holds a conditional license and operates a
motor vehicle with any amount of alcohol in the blood" and that person refuses to
"submit to a test." Id. The Petitioner does not dispute that there was probable cause.

---

[3] The parties stipulated to the fact that the Petitioner took a test. This raises the question of whether this is
an adjudicated fact for purposes of res judicata, Tungate v. Gardner, 2002 ME 85, ¶ 3-4, 797 A.2d 738 at
740 ("valid final judgment"), and judicial estoppel, Bowie v. Landry, 122 A.2d 774, 776 (Me. 1956)
("specifically presented, definitely passed upon, adjudged and decided."). This Court takes judicial notice
of the Order, but finds that even if the fact is "adjudicated", it has no preemptive effect as the meaning of "a
test" for the purposes of a criminal charge is different from what constitutes "a test" under 29-A M.R.S.A.
§ 2457(2).

The Petitioner argues that since a single valid breath test is legally sufficient to support a conviction of Operating Under the Influence, State v. Kennedy, 657 A.2d 773, 774 (Me. 1995); State v. Pineo, 2002 ME 93, 798 A.2d 1093, 1096, that the words "a test" should be interpreted so that as long as a suspect submits to any one valid test, his or her statutory duty to submit to any further tests is discharged. The Respondents argue that since the Petitioner refused to take the fifth attempted test, the Petitioner refused to submit to "a test" within the meaning of the statute.

This case requires the Court to interpret statutory law. When interpreting a statute, the main objective is to give effect to the Legislature's intent. To determine that intent, the Court looks first to the statute's plain meaning. If there is no ambiguity, then the Court need proceed no further. If, however, ambiguity exists, then the Court must look beyond that language to the legislative history. McLaughlin v. Superintending Sch. Comm. of Lincolnville, 2003 ME 114, ¶ 13, 832 A.2d 782, 786. See also, State v. Bjorkaryd-Bradbury, 2002 ME 44, ¶ 9, 792 A.2d 1082, 1084; Lewiston Raceway, Inc. v. Maine State Harness Racing Comm'n, 593 A.2d 663, 665 (Me. 1991). The Court must consider the "whole statutory scheme of which the section at issue forms a part, so that a harmonious result, presumably the intent of the Legislature may be achieved." Ashe v. Enterprise Rent-A-Car, 2003 ME 147, ¶ 7, 838 A.2d 1157, 1159. Finally, a Court should avoid results that are absurd, inconsistent, unreasonable or illogical. International Paper Co. v. Bd. of Envtl. Prot., 629 A.2d 597, 599-600 (Me. 1993).

A plain reading of the statute supports the Respondents' interpretation. They argue that since the fifth attempted test was "a test" and the Petitioner refused to take it,

the Petitioner refused to take "a test." The Petitioner suggests that a suspect no longer has a duty to submit to "a test" once they have submitted to any one previous valid test.

However, the statute does not differentiate between tests given after a valid test has already been obtained and tests given before a valid test has yet to be obtained. It simply states that suspects must submit to "a test." Following the Petitioner's logic would yield to an, "absurd, inconsistent unreasonable or illogical" result. Id. A suspect could easily deprive law enforcement agencies of collecting accurate and substantiated evidence if their duty to submit to a test was discharged after only a single valid test was conducted. The fact that a single test is legally sufficient for a prosecution does not automatically mean that submitting to just one valid test is also sufficient under the statute. To begin, criminal law and administrative law are materially different and touch on different considerations. Further, the State has interests beyond merely prosecuting crimes. The statute also encourages cooperative and peaceful relations with law enforcement authorities and enhances public safety by discouraging drink driving. For this Court to conclude that because one test *can* support a conviction[4], suspects no longer have a duty to submit to any further tests within the meaning of the statute would not only fly in the face of logic, but would also directly contradict public policy and a plain reading of the statute.

Here, there was more than substantial evidence that the Petitioner refused to take a fifth breath test and that the Petitioner did not meet his burden of proving that he was physically incapable of taking the test. This Court finds that the Petitioner did have a

---

[4] It is important to remember that just because a single valid test can support a conviction of Operating Under the Influence, without evidence of reliability and a cooperative fact-finder, one test is not the best form of evidence and is vulnerable to attack. See Kennedy, 657 A.2d at 774; Pineo, 2002 ME 93 at ¶ 6, 798 A.2d at 1096.

statutory duty to continue to cooperate and that the hearing officer did not abuse his discretion when he found that the Petitioner did not submit to "a test" within the meaning of 29-A M.R.S.A. § 2457(2).

While a suspect's statutory duty to take "a test" is not limited to one test, the statute implies a rule of reasonableness. In this case, Officer Pelletier was following Department of Health and Human Services ("**DHHS**") regulations that require officers to obtain two separate breath samples. DHS, 10-144 CMR Ch. 269. This regulation created a de facto reasonable request. For the foregoing reasons, the Court affirms the Respondents' decision that the Petitioner refused to submit to an alcohol breath test within the meaning of 29-A M.R.S.A. § 2457(2).

## CONCLUSION

Accordingly, the entry is:

Petitioner's motion to modify the record is **DENIED**. Petitioner's motion to take judicial notice is **GRANTED**. Decision of the Respondents, Secretary of State and Bureau of Motor Vehicles is **AFFIRMED**.

DATED: Jan. 29, 2005

Justice, Maine Superior Court
Andrew M. Mead