2002 ME 145

**STATE of Maine**

v.

**James MELANSON**

**No. Pen–01–600.**

Supreme Judicial Court of Maine.

On Briefs: June 27, 2002.

Decided: Aug. 27, 2002.

R. Christopher Almy, District Attorney, C. Daniel Wood, Asst. Dist. Atty., Bangor, for State.

Joseph M. Baldacci, Esq., Bangor, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

LEVY, J.

[¶ 1] James Melanson appeals from the judgment of conviction entered in the Superior Court (Penobscot County, *Mead, J.*) following a jury verdict finding him guilty of one count of operating under the influence (Class D) in violation of 29–A M.R.S.A. § 2411(1) (1996).[1] Melanson argues that the evidence was not sufficient to support the conviction and that the court erred by refusing to declare a mistrial based on a juror's prior experience as a police officer. We affirm the judgment.

---

1. Section 2411(1) provides:

    **1. Offense.** A person commits OUI, which is a Class D Crime unless otherwise provided, if that person operates a motor vehicle:

    **A.** While under the influence of intoxicants; or
    **B.** While having a blood-alcohol level of 0.08% or more.

    29–A M.R.S.A. § 2411(1).

## I.  BACKGROUND

[¶ 2] The trial evidence may be summarized as follows: At about 7:30 p.m. on December 31, 1999, Deputy William Birch of the Penobscot County Sheriff's Department was patrolling Route 1A in Holden. He observed Melanson's pickup truck operating at a high rate of speed and obtained a radar reading of 67–69 miles per hour in a 45 mile-per-hour zone. He also observed Melanson's vehicle swerve in and out of its lane of travel on four separate occasions over the course of 1.5 miles. Deputy Birch activated his blue lights, and Melanson pulled over.

[¶ 3] When Deputy Birch approached the vehicle, Melanson rolled the driver's side window down one or two inches and did not make eye contact with Birch. Deputy Birch could smell an odor of intoxicating liquor coming from the cab area of Melanson's vehicle. When Deputy Birch was able to make eye contact with Melanson, he noticed that Melanson's eyes were "reddish." When asked to step out of the vehicle to perform field sobriety tests, Melanson became agitated and refused. Because of the cold weather, Deputy Birch offered to conduct a couple of field sobriety tests in his cruiser. Again, Melanson refused. Deputy Birch placed Melanson under arrest and transported him to the Penobscot County Sheriff's Department.

[¶ 4] Along the way, Melanson acted belligerently, swore at Deputy Birch, and kicked the console in the cruiser. At the Department, Melanson was uncooperative and belligerent, and at one point he had to be restrained because he kicked a door.

[¶ 5] Melanson initially agreed to take an intoxilyzer test. In order to obtain reliable results, the intoxilyzer test operator conducts two separate tests. During the first test, the operator noticed that Melanson was not properly blowing into the instrument's mouthpiece. Rather than blowing into the machine, Melanson blew a quick breath around the mouthpiece. Melanson refused to blow a second time and refused to sign the implied consent form read to him by Deputy Birch. The operator of the intoxilyzer test also detected an odor of an intoxicating beverage coming from Melanson's mouth area. Melanson was charged with one count of operating under the influence.

[¶ 6] Melanson's case was tried before a jury and within minutes of the initiation of jury deliberations, the court received a note from the foreman stating that one juror did not feel comfortable participating in the decision due to his past work as a police officer.[2] The trial justice immediately instructed the jury to stop deliberating and had the juror brought into his chambers along with both attorneys. The trial justice and, subsequently, both counsel questioned the juror as to the reasons for his discomfort and whether he could serve as a fair and impartial juror. When examined, the juror explained that he wanted Melanson to get a fair trial and that he did not want his prior work experience as a deputy sheriff from 1977 to 1979 to influence other jurors who did not have similar experience. The court instructed the juror that it would not be improper for him to serve as long as he did not offer his own experiences or expertise as evidence in the jury deliberations, and the juror indicated that he would like to continue to serve on the jury. The following excerpts are representative of the dialog:

> THE JUROR: I know exactly what I'd like to do. I'd like to continue to serve, but I want to make it clear that I want the gentleman to have a fair trial. But I

2. The transcript indicates that the jury left the courtroom at 4:20 p.m. and the court held a conference in chambers in regard to the jury's note at 4:34 p.m.

want to make it clear, as well, that both the defense and the prosecuting attorney know where I'm coming from.

. . . .

THE COURT: I think as long as you don't start offering evidence in the jury room you'd be okay. I think—you're nodding. I think you understand that pretty well.

THE JUROR: Indeed I do.

. . . .

[DEFENSE COUNSEL]: Do you have a concern that Mr. Melanson, he might not get a fair trial, to make sure he does get a fair trial? I'm trying to understand where your concerns may have changed?

THE JUROR: Well, again, I didn't have any concerns, but as the trial progressed I was just reflecting on my prior experience, and I think Your Honor made it very clear as long as I don't express— involve my expertise and just express how I view the trial as it's addressed, then I shouldn't be an overwhelming influence on someone because everybody has an opinion. I have mine and they have theirs, but I just felt it would be fair to your client that the system should know.

Once the juror was excused from the trial justice's chambers, the trial justice discussed the juror's statements with both counsel, and concluded:

THE COURT: [A]fter observing his demeanor, I got a real sense of sincerity from this guy, not only from his words but from his actions and his—reactions, and just his tone of voice and his demeanor convinced me that he has one concern which is to give the defendant [a fair trial,] he could easily have just not said a word to us and [it] never would have seen the light of day. He is probably the kind of guy we want to have as a juror. So over the defendant's objec-

tion, I'm going to direct the jury to continue their deliberations.

[¶ 7] The jury later returned a guilty verdict. The court sentenced Melanson to twenty days in the county jail, ordered him to pay $600 in fines, and suspended his driver's license for 180 days. Melanson then filed a timely appeal.

## II. SUFFICIENCY OF THE EVIDENCE

[¶ 8] Melanson first argues that the evidence was not sufficient to support a conviction because "[t]here were no field sobriety tests, no actual refusal of taking a breath test, no proof that he had actually consumed alcohol and in fact when the officer was speaking to Mr. Melanson at the police station he [did not smell] liquor on him at all."

[¶ 9] "When reviewing the sufficiency of the evidence, we view the evidence in 'the light most favorable to the State to determine whether the trier of fact rationally could have found beyond a reasonable doubt every element of the offense charged.'" *State v. McCurdy*, 2002 ME 66, ¶ 10, 795 A.2d 84, 88 (quoting *State v. Turner*, 2001 ME 44, ¶ 6, 766 A.2d 1025, 1027). In order to prove that Melanson is guilty of OUI, the State is required to show that he operated a motor vehicle "[w]hile under the influence of intoxicants" or that he did so "[w]hile having a blood-alcohol level of 0.08% or more." *See* 29–A M.R.S.A. § 2411(1). "In an OUI prosecution, the State does not need precise evidence of a person's blood alcohol content (such as would be provided by the results of an intoxilyzer test) in order to prove that the person was under the influence of an intoxicant: testimony that the defendant exhibited symptoms of intoxication can be sufficient to support a finding that the defendant was under the influence."

*McCurdy,* 2002 ME 66, ¶ 10, 795 A.2d at 88.

[¶ 10] Contrary to Melanson's contention, the evidence presented at trial was sufficient to support his conviction. Deputy Birch observed Melanson speeding and weaving in and out of his lane. He detected an odor of intoxicating liquor coming from the cab of Melanson's vehicle and noticed that Melanson's eyes were "reddish." The operator of the intoxilyzer machine also detected an odor of alcohol on Melanson's breath. Melanson displayed belligerent behavior, refused to perform field sobriety tests and was uncooperative throughout the investigative process. These facts support the jury's conclusion that Melanson was operating a motor vehicle while under the influence of intoxicants.

## III. JUROR IMPARTIALITY

[¶ 11] Melanson next argues that the court erred by denying his motion for a mistrial because of the concern raised by a juror that, due to the juror's prior experience as a police officer, Melanson might not get a fair trial.

A motion for a mistrial is addressed to the sound discretion of the trial court, and [this Court] review[s] a denial of the motion only for an abuse of that discretion.... The trial court should deny a motion for mistrial except in the rare case when the trial cannot proceed to a fair result and no remedy short of a new trial will satisfy the interests of justice.

*State v. DePhilippo,* 628 A.2d 1057, 1058 (Me.1993) (alteration in original) (quoting *State v. Clark,* 591 A.2d 462, 464 (Me.1991) (citations omitted)). When the impartiality of a jury is called into question, "the trial court should individually interview the jurors to ascertain whether each can remain impartial. The court's determination of whether a juror can remain impartial is entitled to substantial deference because of the trial court's ability to observe and to assess the juror's credibility." *State v. Mair,* 670 A.2d 910, 912–13 (Me.1996) (quoting *State v. Wright,* 662 A.2d 198, 201 (Me.1995) (citations omitted)).

[¶ 12] Contrary to Melanson's contention, the court acted within its discretion by denying Melanson's request for a mistrial. The manner in which the trial justice managed the juror's concern was exemplary. The trial justice (1) carefully explored the nature of the juror's concern regarding the impact his prior employment in law enforcement might have upon his fellow jurors, and (2) satisfied himself that the juror was sincere in his commitment to not bring his prior experience to bear upon the jury's deliberations. The court directed the juror not to offer evidence, by way of his prior experience, in the jury room, and found that the juror clearly understood his responsibility to decide the case only from the evidence presented.

[¶ 13] "The determination of credibility in such circumstances is a matter solely within the province of the trial judge, and [this Court] therefore give[s] substantial deference to the court's ultimate decision regarding the juror's impartiality or lack thereof." *State v. Boyce,* 1998 ME 219, ¶ 7, 718 A.2d 1097, 1099–1100. Here, the in camera proceeding provided ample support for the trial justice's conclusion that the juror understood his duty to serve with impartiality and was sincere in his stated desire to do so. Accordingly, the court properly denied defendant's motion for a mistrial.

The entry is:

Judgment affirmed.