2003 ME 44

**STATE of Maine**

v.

**Eugene MERCHANT.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Feb. 26, 2003.

Decided: April 1, 2003.

Michael E. Povich, Dist. Atty., Gail S. Marshall, Asst. Dist. Atty., Ellsworth, for the State.

Jeffrey C. Toothaker, Toothaker & Chong, Ellsworth, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, ALEXANDER, CALKINS, and LEVY, JJ.

ALEXANDER, J.

[¶ 1] Eugene Merchant appeals from judgments entered after a jury verdict by the Superior Court (Hancock County, *Hjelm, J.*), convicting him of gross sexual assault (Class A), in violation of 17–A M.R.S.A. § 253(1)(A) (Supp.2002); unlawful sexual contact (Class B), in violation of 17–A M.R.S.A. § 255(1)(H) (Supp.2002);[1] and two counts of kidnapping (Class A), in violation of 17–A M.R.S.A. §§ 301(1)(A)(3), (4) (1983).[2] Merchant contends that there is insufficient evidence to support the convictions and that the Superior Court erred in: (1) conducting lengthy questioning of jurors after an incident involving contact between several jurors and relatives of Merchant; (2) allowing the jury to complete its deliberations on a Sunday; and (3) denying a motion for a new trial when Merchant disclosed, after trial, that one of the jurors was Merchant's second cousin. Finding sufficient evidence to support the convictions and no error in the actions of the Superior Court, we affirm the judgments.

## I. CASE HISTORY

[¶ 2] The evidence presented at the jury trial indicated the following: On the evening of December 7, 2000, Eugene Merchant, then age thirty-seven, purchased liquor at the request of his nineteen-year-old cousin, and the cousin's seventeen-year-old girlfriend. The three drove around the Gouldsboro and Sullivan area of Hancock County as they consumed the liquor, ultimately driving onto dirt roads leading away from Route 1. There, Merchant stopped the vehicle and asked his cousin to get out to check a tail light. Once his cousin was out of the vehicle, Merchant sped off down the road with the seventeen-year-old girl. After driving some distance, Merchant stopped the vehicle and then, by a combination of physical violence and threats, forced the seventeen-year-old girl to endure several sexual acts. Merchant then drove back out onto Route 1. For a time, Merchant refused to release the seventeen-year-old or allow her to put her clothes back on, and he made a number of threats to her regarding what might

---

1. Title 17–A M.R.S.A. § 255 has since been repealed by operation of P.L.2001, ch. 383, § 22. The repeal was effective January 31, 2003.

2. Title 17–A M.R.S.A. § 301 has since been amended by operation of P.L. 2001, ch. 383, § 26, effective January 31, 2003.

happen if she disclosed to anyone what had occurred. Ultimately, Merchant released the girl, and the matter was then reported to the authorities. Merchant contended that the entire encounter was consensual.

[¶ 3] A Hancock County Grand Jury indicted Merchant for one count of gross sexual assault, 17–A M.R.S.A. § 253(1)(A); one count of unlawful sexual contact, 17–A M.R.S.A. § 255(1)(H); and two counts of kidnapping. The first kidnapping charge alleged that Merchant violated 17–A M.R.S.A. § 301(1)(A)(3), when, prior to, and during the sexual encounter, he knowingly restrained the girl with the intent to inflict bodily injury on her, or to subject her to criminal sexual conduct. The second count asserted that Merchant restrained the girl with the intent to terrorize her in violation of 17–A M.R.S.A. § 301(1)(A)(4) by refusing to release her as he continued to drive around and threaten her.

[¶ 4] A jury trial began on Tuesday, November 13, 2001. Based on counsel's estimates of time, the trial was scheduled to be completed by Friday, November 16, 2001. On the evening of November 15, 2001, after the trial proceedings for the day were completed, a member of Merchant's family stepped in front of two jurors as they were leaving the courtroom to go home. The two jurors reported that this individual stared at the jurors in an intimidating manner. One juror reported: "If looks could have killed, I would have been dead ...." One juror who had been confronted reported this incident to a jury officer when they returned to the courtroom on Friday morning. Several other jurors may have heard this report. Another juror privately reported to a court officer this event and concern about actions of one of Merchant's friends or relatives in the courtroom.

[¶ 5] The incident was promptly reported to the trial court. The court then proceeded to interview each of the fourteen sitting jurors, separately, in chambers to determine what each juror knew of the incident, whether that juror felt intimidated, and whether the incident would in any way affect the juror's ability to be an objective and impartial juror. Counsel for the State and the defense were present during the court's interviews with the jurors, and the court allowed each attorney to ask questions of each juror, in addition to the questions asked by the court. The court also advised Merchant that he could be present during the inquiry, but Merchant declined.

[¶ 6] The individual questioning of the jurors began at approximately 10:00 A.M. and continued until approximately 3:00 P.M. on Friday, November 16, 2001. The questioning revealed some other efforts by persons whom jurors perceived to be associated with Merchant to engage jurors in casual conversation, e.g., "Where do you get your nails done?" or similar comments.

[¶ 7] After the inquiry, Merchant, through counsel, challenged two jurors for cause. The court excused one of the challenged jurors. The court declined to excuse the other challenged juror because of concern that the jury would be left with no alternate in a case that was, of necessity, going to have to proceed into the weekend.

[¶ 8] The trial then resumed and was completed on Saturday morning, November 17, 2001, with closing arguments and the court's charge to the jury. Before deliberations began, the court excused the other challenged juror. Deliberations began shortly before noon on Saturday, November 17, 2001, and continued into the evening with several breaks for food, fresh air, clarification of jury instructions, and a read-back from the transcript.

[¶ 9] When the jury had not reached a verdict by early Sunday morning, the court met with counsel and the defendant in the

courtroom to discuss the situation. The court suggested sending a note to the jury to ask them if they wished to continue their deliberations. The court noted that 4 M.R.S.A. § 1051 (1989) prohibited the court from holding sessions on Sunday.[3] The court also recognized that M.R.Crim. P. 31(d) specified that a jury may return a verdict on a nonbusiness day if the deliberations had commenced on a regular business day.[4]

[¶ 10] Neither the State nor the defense objected to asking the jury whether it wanted to continue deliberations. Accordingly, the court sent a note to the jury room. The jury immediately responded with a note in large bold letters stating, "We are staying." The court then decided, with agreement of the State and defense counsel, to allow the jury to continue its deliberations.

[¶ 11] Shortly after 4:00 A.M. on the morning of Sunday, November 18, 2001, the jury returned a verdict of guilty on all counts.

[¶ 12] Prior to sentencing, Merchant filed a motion to vacate the verdict and for a new trial on the grounds that one of the jurors was his second cousin. The record suggests that Merchant may have been aware of the relationship to the juror during the trial, but his knowledge was not disclosed to the court. The court conducted a hearing, at which the questioned juror appeared and testified that he was unaware of any relationship with Merchant at the time of the jury trial. Merchant points to no prejudice that may have resulted from the fact that a relative was on the jury. The court denied the motion for a new trial.

[¶ 13] Merchant was later sentenced to twenty-five years in the custody of the Department of Corrections for the gross sexual assault conviction, and concurrent sentences of ten years for the unlawful sexual contact conviction and the two kidnapping convictions. Merchant then brought this appeal. Although represented by counsel on appeal, Merchant himself and some of his relatives filed separate documents in support of his appeal, seeking to raise new factual issues regarding the conduct of the trial and whether the sexual acts were consensual.

## II.  LEGAL ANALYSIS

### A.  Extensive Jury Questioning

[¶ 14] Merchant contends that the lengthy, individual inquiry of jurors, coupled with the fact that the inquiry focused on the nature and impact of actions of Merchant's family members, may have compromised the verdict by creating an uneasy feeling in jurors about Merchant himself. This contention is advanced for the first time on appeal. Counsel for Merchant at trial consented to and participated in the lengthy inquiry to which Merchant now objects.[5]

[¶ 15] Where an issue is raised for the first time on appeal, our review is

---

3.  Section 1051 provides, in pertinent part: "No court may be held on Sunday or any [legal holiday] ...." 4 M.R.S.A. § 1051 (1989).

4.  M.R.Crim. P. 31(d) states: "(d) Verdict on Nonbusiness Days and After Hours. The court may receive a verdict on any nonbusiness day or outside business hours, from a jury that commenced its deliberations on a regular business day."

Advisory Notes to a 2000 amendment to this rule indicate that "nonbusiness day" is intended to include days which had been characterized as a "legal holiday." M.R.Crim. P. 31(d) advisory committee's note to 2000 amend., Me. Rptr., 746–54 A.2d LXX.

5.  Merchant is represented by different counsel on appeal.

limited to whether the court's actions reflect "obvious error." *In re Joshua B.,* 2001 ME 115, ¶¶ 9–10, 776 A.2d 1240, 1243. Obvious error requires us to vacate a trial court's judgment only "if the error deprived the party of a fair trial and resulted in a substantial injustice." *Id.* ¶ 9, 776 A.2d at 1243; *In re William S.,* 2000 ME 34, ¶ 8, 745 A.2d 991, 995.

[¶ 16] It is regrettable that an incident occurred involving a confrontation between jurors and a member of Merchant's family, as jurors were leaving the courtroom for home at the end of the day. However, the physical arrangements at courthouses and limitations on court security staff often make it difficult to assure separation of jurors from other trial participants and spectators, while jurors, within or around the courthouse, are coming to or leaving the jury room or the courtroom. In this case, when it learned of the problem, the court promptly informed the parties of what it had learned. *See State v. Kaler,* 1997 ME 62, ¶ 18, 691 A.2d 1226, 1232 (stating that court should promptly inform parties of any jury problems when it learns of such problems). While outside contacts with the jurors were regrettable, the trial court's response protected the integrity of the process and assured that the trial could proceed and that the jurors who would decide the case were objective and impartial.

[¶ 17] We have indicated that when the impartiality of a jury is called into question, the trial court should individually interview the affected jurors to ascertain whether each can remain impartial. *State v. Melanson,* 2002 ME 145, ¶ 11, 804 A.2d 394, 398; *State v. Mair,* 670 A.2d 910, 912–13 (Me.1996).

[¶ 18] Individualized inquiry on the facts of this case was essential to assure that no other juror was aware of what any particular juror may have seen, heard or thought about the incident. The trial court properly conducted such an individualized inquiry of each juror to determine if that juror's capacity to remain impartial had been compromised by either the events of the confrontation with Merchant's relative, or by anything the juror may have seen or heard when the matter was reported to the jury officer. The trial court also acted well within its discretion in permitting counsel to participate in the individualized questioning of the jurors.

[¶ 19] As a result of the individualized inquiry, Merchant challenged only two of the fourteen questioned jurors. The court excused one of these jurors, but determined that the other juror might be able to sit and render an impartial verdict, if necessary. The trial court's determination of whether a juror can remain impartial is entitled to substantial deference because of the court's ability to observe and assess the juror's believability during the individualized inquiry. *Melanson,* 2002 ME 145, ¶ 11, 804 A.2d at 398. The second questioned juror was excused before deliberations began, leaving no member of the jury to whom Merchant objected.

[¶ 20] It is fortunate that, during jury selection, the trial court had elected to have two alternate jurors. M.R.Crim. P. 24(d). This choice gave the court greater flexibility in excusing jurors and in making the decision to extend the trial into the weekend, both of which might have been problematic had there been no alternates available.

[¶ 21] The trial court committed no error, let alone obvious error, in appropriately addressing, through individualized inquiry, the problem presented by contacts between jurors and relatives of Merchant.

B. Extending Deliberations Into Sunday

[¶ 22] Citing 4 M.R.S.A. § 1051, Merchant contends that the Superior Court erred by allowing the jury to delib-

erate into the early morning hours of Sunday, November 18, 2001. Section 1051 states that court shall not be held on Sundays or legal holidays. Section 1051 and previous similar provisions prohibiting court sessions on Sundays or legal holidays have existed in the statutes for many years. *See* R.S. ch. 107, § 55 (1954). These provisions extend back to a time when, by rule, jurors were not permitted to separate once deliberations had begun. Thus, M.R.Crim. P. 24(e) formerly stated in pertinent part that: "[T]he jury may be allowed to separate until it retires to consider its verdict, at which time the jury shall be sequestered until discharged, except that the court may in special circumstances authorize the jurors to separate after they have delivered a sealed verdict." [6] 1983 MAINE RULES OF COURT.

[¶ 23] To allow juries to continue deliberations and not separate, and to respect the limitation in 4 M.R.S.A. § 1051 on court sessions being held or convening on Sundays or legal holidays, M.R.Crim. P. 31(d) was adopted to allow the court to "receive a verdict on any nonbusiness day or outside business hours, from a jury that commenced its deliberations on a regular business day." Thus, the rules permit the trial court, in its discretion, to allow jury deliberations commenced on another day to continue into a Sunday or other legal holiday as defined by 4 M.R.S.A. § 1051.

C. Second Cousin on the Jury Panel

██ [¶ 24] In its questioning of the jury prior to jury selection, the court inquired if any juror knew or was related to Eugene Merchant. No one was selected for the jury who indicated that he or she knew or was related to Merchant. After trial, Merchant filed a motion to vacate the verdict and for a new trial, asserting that one of the jurors was his second cousin.

[¶ 25] By statute, a relationship of consanguinity or affinity within the sixth degree (second cousins) disqualifies a person who is required to be disinterested or indifferent from participating in a matter in which others are interested. 1 M.R.S.A. § 71(6) (1989). We have held that the limitation in section 71(6) applies to jurors in criminal cases. *See Bennett v. State*, 161 Me. 489, 494–95, 214 A.2d 667, 671 (1965).

[¶ 26] After Merchant filed his motion, the court held a hearing and questioned the juror. The juror testified that he was not aware of his relationship with Merchant at the time of jury selection or during the trial and that he only became aware of the relationship on Thanksgiving Day, following the trial, when his father told him that he and Merchant were related. Merchant testified that, on the day of jury selection, he had some idea that the challenged juror might be a relative and had discussed it with counsel but had elected not to raise an objection at that time.

[¶ 27] In *Bennett*, we stated that, when a party knows of a potential objection to a juror, "[t]he party cannot keep quiet and speculate upon the chances of a verdict in his favor. He should, at the first opportunity after the discovery is made, make an open disclosure of the fact for the benefit of all concerned." 161 Me. at 495, 214 A.2d at 671 (quoting *Brown v. Reed*, 81 Me. 158, 161, 16 A. 504, 505 (1889)). *See also State v. Chattley*, 390 A.2d 472, 477 (Me.1978) (when a party knows or with

---

6. M.R.Crim. P. 24(e) presently states:
   (e) **Sequestration of the Jury**. In all jury trials the jury shall be allowed to separate until it retires to consider its verdict, unless the court finds it necessary to order seques-
   tration of the jury to ensure the fairness of the trial. Upon retiring to consider its verdict, the jury shall be sequestered, but it may be allowed to separate in the discretion of the court.

due diligence could ascertain facts relating to a juror's qualifications, but fails to inform the court of those facts within time to allow the court to correct any possible error, the party waives any right subsequently to raise that objection). Separately, 14 M.R.S.A. § 1303 (2003) specifies that: "If a party knows any objection to a juror in season to propose it before trial and omits to do so, he shall not afterwards make it, unless by leave of court for special reasons."

[¶ 28] Here, Merchant waived any potential objection to the juror by not raising his objection in a timely manner when he suspected that he might be related to the juror. Further, Merchant does not indicate any prejudice from this individual having sat on the jury. No error is indicated by the court's denial of Merchant's motion for a new trial on a point that he did not sufficiently preserve at jury selection and on which he can demonstrate no prejudice.

D. Sufficiency of the Evidence

■ [¶ 29] Merchant's only significant sufficiency of the evidence contention relates to his assertion that the evidence is insufficient to support both kidnapping convictions. The kidnapping statute, 17–A M.R.S.A. §§ 301(1)(A)(3), (4), states in pertinent part:

1. A person is guilty of kidnapping if
. . .

A. He knowingly restrains another person with the intent to
. . . .

(3) inflict bodily injury upon him or subject him to conduct defined as criminal in chapter 11; [the sex crimes chapter]

(4) terrorize him or a 3rd person . . . . [7]

[¶ 30] Here, the evidence was sufficient to support Merchant's conviction for two separate kidnapping events. The first occurred when Merchant physically restrained the seventeen-year-old girl by driving her miles down a back road and then physically assaulting her and committing sex crimes upon her. These actions violated section 301(1)(A)(3). A separate kidnapping event occurred when, after Merchant had completed his sexual assault and had driven back out onto Route 1, he continued to restrain the victim by keeping her in his vehicle and not allowing her to dress for some time, and then terrorized her with threats of bodily injury and physical harm if she reported what had occurred. These actions violated section 301(1)(A)(4). Thus, the evidence supports both kidnapping convictions as events that occurred at separate times and under differing circumstances.

[¶ 31] Merchant's other contentions do not merit further discussion.

The entry is:

Judgments affirmed.

---

**7.** The amendment to 17–A M.R.S.A. § 301, effective January 31, 2003, replaced the word "he" with "the actor," and the word "him" with "the other person." *See* P.L.2001, ch. 383, § 26.