2004 ME 78

**STATE of Maine**

v.

**Michael E. COMMEAU.**

Supreme Judicial Court of Maine.

Argued: May 13, 2003.
Decided: June 16, 2004.

Evert N. Fowle, District Attorney, Alan P. Kelley, Deputy Dist. Atty. (orally), Augusta, for State.

Jennifer Humphreys Rohde, Esq. (orally), Catherine R. Connors, Esq., Pierce Atwood, Portland, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

Majority: SAUFLEY, C.J., and CLIFFORD, RUDMAN, ALEXANDER, and LEVY, JJ.

Concurrence: ALEXANDER, J.

Dissent: DANA and CALKINS, JJ.

SAUFLEY, C.J.

[¶ 1] Michael E. Commeau appeals from the judgment of conviction entered in the Superior Court (Kennebec County, *Warren, J.*) following a jury verdict finding him guilty of gross sexual assault (Class A), pursuant to 17–A M.R.S.A. § 253(1)(A) (1983 & Supp.2003),[1] and kidnapping (Class B), pursuant to 17–A M.R.S.A. § 301(1)(A)(3) (1983).[2] Commeau received a sentence of ten years on the kidnapping conviction and a consecutive sentence of forty years on the gross sexual assault conviction. Commeau challenges both his conviction and his sentence. We affirm the judgment of conviction and the sentence.

## I. CASE HISTORY

[¶ 2] The evidence before the court and the jury supported the jury's determination that Commeau kidnapped and sexually assaulted a woman whom he had stalked in order to determine when she would be most vulnerable to his attack. His target was a young woman who worked in an

---

1. This statute has since been slightly amended by P.L.2001, ch. 383, § 14 (effective Jan. 31, 2003), *codified at* 17–A M.R.S.A. § 253(1)(A) (Supp.2003).

2. This statute has since been slightly amended by P.L.2001, ch. 383, § 26 (effective Jan. 31, 2003), *codified at* 17–A M.R.S.A. § 301(1)(A)(3) (Supp.2003).

office on a relatively unpopulated stretch of road in the Monmouth/Winthrop area. On the evening before the attack, the woman worked until just before 8:00 P.M. When she left her office, she noticed a white van parked across the road from her office facing toward Lewiston. The van looked empty.

[¶ 3] The following evening, she worked at her office until 7:00 P.M. As she approached her car to drive home, a man on the right side of the building yelled, "Hey." She then saw a man with a black ski mask and mechanic's coveralls running towards her. The ski mask fully covered his face, his coveralls were blue and very thin, and he was wearing a dark colored sweatshirt under the coveralls. He was carrying a dark colored object in his hand.

[¶ 4] Almost as soon as she noticed him, he was on top of her. He pushed her down to the ground and put his hand over her mouth to muffle her screams. Grabbing her hair, Commeau told the victim that he had just committed a robbery and needed a ride. Dragging her by her hair, he ordered her to get into her car and drive toward Maranacook Lake. Ultimately, he ordered her to drive down a dirt road in a rural area. After turning down the dark, unlit road, Commeau told her that she was going to kiss him and that she should turn the vehicle and its lights off. She refused, but Commeau took the keys from the ignition and threatened to harm her unless she complied. Commeau told the victim to kiss him "like [she] mean[t] it" or he would stab her with his knife.

[¶ 5] When she kissed Commeau, she felt that he had a scruffy beard, like two or three days of growth, but she could not see his face. She tried to escape when Commeau released her hair, but he wrestled

her to the ground and again threatened to stab her with his knife if she tried to escape. Commeau then told the victim to pull down her pants. The victim stated that she did not want to die. Commeau told her to lift up her shirt. He then started kissing her breasts and fondling her genitals. Commeau then told her that she was going to do something for him, and he directed her to turn around and face away from him. While Commeau was behind her, the young woman heard a heavy metallic clang on the roof of the car and a crinkling noise, like plastic.[3]

[¶ 6] Commeau ordered the victim to get on her knees and turn around in front of him. She saw that her attacker's coveralls were down and that his genitals were exposed. After Commeau ordered her to perform oral sex on him, she touched his genitals with her mouth. Commeau then yelled at the victim several times to swallow his ejaculate, which she did.

[¶ 7] After the sexual attack was completed, Commeau again seized the victim by her hair, dragged her back to her car, and ordered her to drive back toward the main road. As they neared a closed restaurant, Commeau threatened to put her in the trunk of her car, but a sensor light at the restaurant illuminated and a vehicle was nearby at an adjacent business. Commeau then ordered her to leave the location and to drive toward her office.

[¶ 8] When they arrived at the office, Commeau ordered her to drive by to make sure that neither her husband nor the owner of the business were looking for her. Passing her office, she noticed the same white van that she had observed the previous evening parked on the left-hand side of the road. She was sure it was the same van, and she concluded that it be-

---

**3.** Commeau has a penile implant that must be pumped by hand prior to sexual activity. It does not affect his ability to engage in sex or to ejaculate.

longed to her attacker. After they passed a police cruiser, Commeau ordered her to drive on other roads, then he ordered her to turn around to return to her office. While on another road, she told Commeau that his van was only a short distance through the woods from their location. Commeau replied that it was more like ten miles through the woods. He did not state that he did not have a van or that the van was not his. While driving back toward her office, she observed that the van had not moved and that no one was around it.

[¶ 9] Commeau finally ordered her to drive behind a body shop near her office. He then took her car keys and departed on foot. After Commeau left, she left her car and followed a chain-link fence out to the main road. There, she observed that the white van's lights were on and watched the van turn around from its original direction facing toward Winthrop and drive in the opposite direction, toward Lewiston. She then ran in the opposite direction and called her parents and husband from a nearby home.

[¶ 10] Commeau was apprehended later that evening.[4] He was charged with gross sexual assault (Class A), 17–A M.R.S.A. § 253(1)(A), and kidnapping (Class A), 17–A M.R.S.A. § 301(1)(A)(3).[5] At the conclusion of his trial, the jury returned a verdict finding Commeau guilty of one count of gross sexual assault, Class A, and one count of kidnapping, Class B. The kidnapping charge was reduced to a Class B offense because, following the kidnapping after the sexual assault, Commeau released his victim in a safe place.[6]

[¶ 11] Commeau has a thirty-year criminal history, including violent crimes and sex crimes, in Kansas, Massachusetts, and Maine.[7] He was previously sentenced to

4. Attentive law enforcement work led from the van to Commeau. A state liquor enforcement officer was driving an activated video-equipped cruiser that recorded a vehicle parked on the side of the road on the day of the crime on Route 202. In addition, a Monmouth police officer testified that on the day of the crime, he was traveling on Route 202 shortly before 8:00 P.M. and observed a white van parked on the side of the road in the same location described by the victim. He wrote down the white van's registration number so that he could check on it after transporting a hitchhiker to Winthrop. When he returned at about 8:15 P.M., the van was no longer there. After the officer learned of the abduction later that evening, he contacted the Winthrop police to inform them about the van and license plate number. A check on the registration number of the van ultimately led to Commeau.

5. Pursuant to 17–A M.R.S.A. § 301(1)(A)(3) as it existed at the time of the crime, a person was guilty of kidnapping if that person "knowingly restrain[ed] another person with the intent to ... inflict bodily injury upon him or subject him to conduct defined as criminal in Chapter 11 [including gross sexual assault]." 17–A M.R.S.A. § 301(1)(A)(3) (1983).

Pursuant to 17–A M.R.S.A. § 253(1)(A) (Supp. 2003), a "person is guilty of gross sexual assault if that person engages in a sexual act with another person and ... [t]he other person submits as a result of compulsion as defined in section 251." Section 251 defines compulsion as the "use of physical force, a threat to use physical force or a combination thereof." 17–A M.R.S.A. § 251(1)(E) (Supp. 2003). A "sexual act" includes "[a]ny act between 2 persons involving direct physical contact between the genitals of one and the mouth or anus of the other, or direct physical contact between the genitals of one and the genitals of the other." 17–A M.R.S.A. § 251(1)(C)(1) (Supp.2003).

6. 17–A M.R.S.A. § 301(3) (1983) provides: "Kidnapping is a Class A crime. It is however, a defense which reduces the crime to a Class B crime, if the defendant voluntarily released the victim alive and not suffering from serious bodily injury, in a safe place prior to trial."

7. The record at the sentencing hearing indicated that Commeau had three prior convictions for rape or sexual assault. In addition, he had been convicted of an assault and battery, which may have been a failed attempt at

twenty years at the Maine State Prison after a conviction for rape and gross sexual misconduct. *See generally State v. Commeau,* 438 A.2d 454 (Me.1981). With that twenty-year sentence, Commeau served a concurrent five-year sentence for another gross sexual misconduct charge.

[¶ 12] Prior to sentencing, the court received a sentencing memorandum and victim impact statement from the State and a sentencing memorandum from the defense. At the sentencing hearing, Commeau's criminal history and the similarity and escalation of his latest stalking and sexual assault were discussed extensively. The State urged the imposition of a sentence of 100 years, relying on 17–A M.R.S.A. § 1252(4–B) (Supp.2003) authorizing sentencing of a "dangerous sexual offender" to "a definite period of imprisonment for any term of years." Commeau, appearing with new counsel at sentencing, argued for a much shorter sentence, disputing the seriousness of his prior record and challenging the State's reliance on several prior allegations of sexual assault, including the one that was alleged to have occurred at the Maine State Prison, that had not resulted in convictions. Neither the State nor Commeau addressed the issue of consecutive sentencing in any detail in their sentencing arguments.

[¶ 13] Following the arguments, the court found that the kidnapping was a separate criminal act from the sexual assault. With this finding made, and considering the viciousness of Commeau's conduct and the seriousness of his prior record, the court imposed a sentence of

ten years on the kidnapping charge and a consecutive sentence of forty years on the gross sexual assault charge. Thus, the tactical focus of Commeau's sentencing argument had been partially successful in that the court sentenced Commeau on the gross sexual assault charge within the forty-year range available for any Class A crime, without extending the sentence into the "any term of years" range urged by the State.

[¶ 14] Commeau, again with new counsel, then brought this appeal and filed an application to appeal from the sentence. The Sentence Review Panel granted his application to appeal the sentence. Commeau's sentence appeal challenges the imposition of consecutive sentences and argues further that the sentencing judge misapplied the *Hewey* [8] factors, considered unreliable evidence, improperly considered Commeau a dangerous sexual offender, and imposed a de facto life sentence. Commeau's appeal on the merits challenges several rulings on motions to suppress and on evidentiary issues. We find no error in the court's rulings on motions to suppress or evidentiary issues and do not discuss those challenges further. Regarding the sentence, we focus on Commeau's challenge to the imposition of consecutive rather than concurrent sentences, and we find no other error in the sentencing.

## II. ANALYSIS

■ [¶ 15] In our review of trial court findings in a sentencing proceeding, we view the evidence in the light most favorable to the trial court's factual determina-

---

a sexual assault, and the State reported at sentencing that there were additional allegations of rape and sexual assault that did not result in convictions. One of those other incidents involved an allegation that Commeau committed a gross sexual assault at the Maine State Prison shortly before his 1995 release.

Such nonconviction data, if sufficiently reliable, may be considered in sentencing. *State v. Dumont,* 507 A.2d 164, 166–67 (Me.1986); *see also State v. Whitten,* 667 A.2d 849, 852 (Me.1995).

8.  *State v. Hewey,* 622 A.2d 1151 (Me.1993).

tions. *See State v. Barnard*, 2003 ME 79, ¶ 20, 828 A.2d 216, 222; *State v. Turner*, 2001 ME 44, ¶ 6, 766 A.2d 1025, 1027. In the present case, the facts found by the court in support of the sentence are amply supported by the record, and the court carefully indicated that it was not relying on the allegations of other assaults where there had been no conviction.

[¶ 16] We therefore turn to Commeau's assertion that the court exceeded the bounds of its discretion when it imposed sentences to run consecutively. The Legislature has set out a specific process for determining whether multiple sentences should run simultaneously or should be imposed seriatim. *See* 17–A M.R.S.A. § 1256 (1983 & Supp.2003). The analysis starts from the assumption that multiple sentences will run concurrently, unless the court makes specific findings. *Id.* § 1256(2). Therefore in the absence of the required findings, supported by the record, sentences must run concurrently. If the court concludes, however, that one or more of the factors set out in section 1256(2) are present,[9] it may impose consecutive sentences and must "state its reasons for doing so on the record." 17–A M.R.S.A. § 1256(4) (1983).

[¶ 17] In the present case, the sentencing judge did so in no uncertain terms: "I am of the view that the sentences for the kidnapping charge and the gross sexual assault charge should be consecutive in this case. I do that because I think this is the case where they, first, are unusually serious charges, and second, they are separate in nature." The court then went on to describe the stalking, the mask, and the ensuing violence, and concluded that the kidnapping "alone" was "about as serious a Class B kidnapping as you can have." Those findings are sufficient to meet the court's responsibility to explain the imposition of the consecutive sentences. Thus, we reject Commeau's argument that the sentencing court's articulation, pursuant to section 1256(2), for the justification of consecutive sentences was inadequate.

[¶ 18] Once a sentencing court has concluded that consecutive sentences are warranted, it may still be precluded from imposing consecutive sentences if one of four separate criteria are met. 17–A M.R.S.A. § 1256(3)(A)-(D) (1983). Only one of those factors could have been applicable to the facts in this case. Consecutive sentences are not available if "[o]ne crime consists *only* of . . . facilitation of, the other." 17–A M.R.S.A. § 1256(3)(B) (emphasis added); *see State v. Horr*, 2003 ME 110, ¶ 11, 831 A.2d 407, 411; *State v. Pineo*, 2002 ME 93, ¶¶ 12–13, 798 A.2d 1093, 1098–99.

[¶ 19] The applicability of section 1256(3)(B) is presented for the first time on appeal. None of those criteria were argued by either the State or the defendant as a reason for precluding consecutive

---

9. The court must consider the following factors pursuant to section 1256(2):

A. That the convictions are for offenses based on different conduct or arising from different criminal episodes;

B. That the defendant was under a previously imposed suspended or unsuspended sentence and was on probation, under incarceration or on a release program at the time the person committed a subsequent offense;

C. That the defendant had been released on bail when that person committed a subsequent offense, either pending trial of a previously committed offense or pending the appeal of previous conviction; or

D. That the seriousness of the criminal conduct involved in either a single criminal episode or in multiple criminal episodes or the seriousness of the criminal record of the convicted person, or both, require a sentence of imprisonment in excess of the maximum available for the most serious offense.

17–A M.R.S.A. § 1256(2) (1983 & Supp. 2003).

sentences, and, not surprisingly, the court did not refer to any of the four in its sentencing discussion. Because the defendant did not raise this issue with the sentencing court, we review this aspect of the sentence for obvious error. *See State v. Burdick*, 2001 ME 143, ¶ 13, 782 A.2d 319, 324 (stating that we review a sentence for obvious error if a challenge raised on appeal was not preserved during the sentencing proceeding).

[¶ 20] The question then is two-fold: first, did the absence of an explicit, on the record, discussion of section 1256(3)(B) constitute obvious error, and second, was the court's imposition of consecutive sentences itself obvious error, given the strictures of section 1256(3)(B).

[¶ 21] Regarding the absence of reference to section 1256(3)(B), it bears repeating that neither the State nor the defendant addressed the issue, notwithstanding the opportunity to do so during a lengthy sentencing hearing.[10] Moreover, the defendant himself, through counsel, suggested a consecutive sentence of "ten years tacked on top of something like ten years." The sentencing court accepted the defendant's approach, rejecting the State's call for a 100–year sentence and imposed forty years tacked onto ten years.

■ [¶ 22] We have never required the sentencing judge to address each of the factors set out at section 1256(3) and explicitly negate them, and we do not do so now. *Compare Pineo*, 2002 ME 93, ¶ 14,

798 A.2d at 1099 (stating that the defendant failed to raise an argument regarding section 1256(3)(B) to the sentencing court, thereby depriving it of an opportunity to make findings of fact), *with State v. Fleming*, 644 A.2d 1034, 1036 (Me.1994) (upholding consecutive sentences when court made express finding that efforts to kill victim were separate from gross sexual assault). Although the judge was required to state on the record his reasons *for imposing a consecutive sentence, see* 17–A M.R.S.A. § 1256(4), and did so eloquently, nothing in the statute required the judge to make explicit his findings regarding the *inapplicability* of any of the subparts of section 1256(3) when neither party raised the issue.[11] Therefore, the sentencing judge's lack of reference to section 1256(3)(B) is neither unusual, nor fatal to the sentence imposed. *Pineo*, 2002 ME 93, ¶ 14, 798 A.2d at 1099.

[¶ 23] Addressing, then, the second issue, we cannot conclude that the court's imposition of consecutive sentences constituted obvious error. To do so, we would have to determine that the *only* purpose of the extended, violent, and terrorizing kidnapping was to obtain forced oral sex. The court could well have concluded that restraining, terrifying, controlling, and humiliating his victim were other purposes of Commeau's well-planned kidnapping of his latest victim. Moreover, the continued restraint that occurred after the forced oral sex could not have been executed solely for

10. Indeed, the State, which was focused on Commeau's extraordinary history of sexual assault, sought a *100–year sentence* on the sexual assault charge, and simply recommended a concurrent sentence on the kidnapping. After the court announced its decision to impose the consecutive sentence, Commeau did not seek findings on the issue, did not file a motion pursuant to M.R.Crim. P. 35 seeking a correction of the sentence, and in no way challenged the trial court's determination during sentencing. Not requesting findings after the sentence was announced appears a competent tactical choice; a request for findings could have invited adverse findings, fully supported by the record discussed above.

11. The State's original concession of error regarding the imposition of consecutive sentences was withdrawn at oral argument.

the purpose of that sexual assault. *See State v. Walsh,* 558 A.2d 1184, 1188 (Me. 1989) (upholding consecutive sentences when threats giving rise to terrorism charge were made after the commission of the rape).

[¶ 24] In sum, the consecutive sentence in this case was fully supported by the facts before the sentencing judge. Michael Commeau's criminal record in Maine alone is chilling. Convicted of rape in 1980 and again in 1981 and 1982, he had spent approximately twenty years in Maine's correctional facilities by the time he turned forty-two years old. His criminal record from outside of Maine demonstrates additional assaultive behavior. This latest conviction for kidnapping and gross sexual assault makes his current victim at least the fifth woman he has abducted, assaulted, or raped. Prior lengthy jail sentences have not deterred his criminal actions. The sentencing court's decision, under these circumstances, to sentence Commeau to a total of fifty years in prison represents no error of fact or law, nor an abuse of discretion.[12]

The entry is:

Judgment affirmed.

ALEXANDER, J., concurring.

[¶ 25] I join the Court's opinion. The dissent causes me to write separately because, while focusing on cases decided years ago, it does not recognize recent precedent supporting the consecutive sentence in this case. The dissent cites the concession in the State's brief that the motivation for the initial kidnapping was the *subsequent* commission of sexual assault, but ignores our opinion in *State v. Merchant,* 2003 ME 44, 819 A.2d 1005, decided after the State's brief was filed, which caused the State to withdraw its concession at oral argument. The dissent would vacate the consecutive sentence, based on 17–A M.R.S.A. § 1256(3)(B) (1983), but ignores our opinion in *State v. Horr,* 2003 ME 110, 831 A.2d 407,[13] decided after oral argument in this case, holding that section 1256(3)(B) is inapplicable to crimes, like gross sexual assault, that lack a specific intent element "and are therefore excluded from the limitation provided by 1256(3)(B)." *Horr,* 2003 ME 110, ¶ 11, 831 A.2d at 411.

[¶ 26] In *Horr,* we addressed consecutive sentencing in a case where a defendant stole a vehicle and drove it drunkenly and dangerously, while he was suspended under the habitual offender law. *Id.* ¶ 2, 831 A.2d at 409. There we approved *three* consecutive sentences. *Id.* ¶ 5, 831 A.2d at 410. The basic sentence was a maximum five-year term for the habitual offender law violation, followed by a consecutive maximum five-year term for aggravated operating under the influence, followed by a consecutive maximum six-month term for the driving to endanger, followed by a consecutive eleven-month term for the auto theft. *Id.* ¶¶ 3, 5, 831 A.2d at 409,

---

12. Commeau also contends that the court erred in determining that he should be categorized as a dangerous sexual offender pursuant to 17–A M.R.S.A. § 1252(4–B) (Supp. 2003), thereby permitting the court to sentence him to "a definite period of imprisonment for any term of years." In sentencing Commeau, the court stated that it would impose the same sentence whether or not section 1252(4–B) applied because of the aggravating circumstances. The court's sentence did not exceed the range of a Class A crime. In these circumstances, any error is harmless. *See State v. Cormier,* 2003 ME 154, ¶ 24, 838 A.2d 356, 361 (stating that an error is harmless when it is "highly probable the error did not affect the judgment") (citing *State v. Sullivan,* 1997 ME 71, ¶ 5, 695 A.2d 115, 117).

13. *See also State v. Pineo,* 2002 ME 93, ¶ 13, 798 A.2d 1093, 1098–99.

410. Only the last charge, theft, included a specific intent element.

[¶ 27] In *Horr*, we recognized that "a defendant may not receive consecutive sentences for 'crimes arising out of the same criminal episode' when '[o]ne crime consists only of a ... facilitation of, the other[.]'" *Id.* ¶ 11, 831 A.2d at 411 (quoting 17–A M.R.S.A. § 1256(3)(B)). We noted that 17–A M.R.S.A. § 1256(3)(B) was intended "to prevent consecutive sentences for offenses which were committed as a part of a single course of conduct during which there was *no substantial change in the nature of the criminal objective.*" *Id.* (emphasis in original) (quotation marks omitted). We stated: "Thus, the analysis must focus 'upon the purpose for which the defendant engaged in the criminal conduct.'" *Id.* (quoting *State v. Bunker*, 436 A.2d 413, 419 (Me.1981)). We then held that crimes which require no culpable state of mind to establish the offense "have no criminal purpose and are therefore excluded from the limitation provided by section 1256(3)(B)." *Id.* (citing *State v. Pineo*, 2002 ME 93, ¶ 13, 798 A.2d 1093, 1098–99).

[¶ 28] In *Pineo*, we approved consecutive sentences for aggravated operating under the influence, 29–A M.R.S.A. § 2411(6) (Supp.2001), and aggravated assault, 17–A M.R.S.A. § 208(1) (1983). *Pineo*, 2002 ME 93, ¶¶ 1, 13, 798 A.2d at 1095, 1098–99. There, the operating under the influence charge was aggravated by causing a serious bodily injury, *id.* ¶ 2 n. 1, 798 A.2d at 1095, and the aggravated assault was the serious bodily injury caused—or facilitated—by the operating under the influence. We held that 17–A M.R.S.A. § 1256(3)(B) was inapplicable because all of the terms in section 1256(3)(B) were "specific-intent concepts" that did not apply where at least one of the crimes, the operating under the

influence charge, did not have a mens rea or specific intent element. *Id.* ¶¶ 13–14, 798 A.2d 1093, 1098–99. In *Pineo*, we also indicated that—as with this case—the section 1256(3)(B) issue may not have been preserved because it was not specifically raised in argument before the sentencing court, "denying the court the opportunity to make factual findings on the facilitation issue." *Id.* ¶ 14, 798 A.2d at 1099.

[¶ 29] The gross sexual assault charge upon which Commeau was convicted pursuant to 17–A M.R.S.A. § 253(1)(A) (Supp. 2003) required no proof of a culpable mental state, only proof of a sexual act and submission as a result of compulsion. *State v. Saucier*, 421 A.2d 57, 58–59 (Me. 1980) (indicating that the former Criminal Code rape and gross sexual misconduct by force or threat statutes required no proof of culpable state of mind); *see also State v. Giglio*, 441 A.2d 303, 311 (Me.1982).

[¶ 30] Our precedent in *Horr* and *Pineo* indicate that the gross sexual assault charge, having no criminal purpose and no specific intent element, is subject to consecutive sentencing without the limitation provided by 17–A M.R.S.A. § 1256(3)(B).

[¶ 31] Kidnapping is a specific intent crime. However, to quote *Horr* again: "As a general principle, we have recognized that 'section 1256(3)(B) should be interpreted narrowly' because it limits the otherwise wide discretion of the sentencing court to impose consecutive sentences in appropriate situations." 2003 ME 110, ¶ 15, 831 A.2d at 412 (quoting *Pineo*, 2002 ME 93, ¶ 14, 798 A.2d at 1099). Here the gross sexual assault charge, not subject to the limitations imposed by section 1256(3)(B), was subject to the consecutive sentence to be served after the sentence on the kidnapping charge. Making the sentence a consecutive sentence was not

error.[14]

[¶ 32] The dissent also supports its opinion by reference to the concession in the State's brief that "the motivation for the kidnapping was the *subsequent* commission of a sexual assault." (Emphasis added.) Three weeks after the State had filed its brief, we decided *State v. Merchant*, 2003 ME 44, 819 A.2d 1005. *Merchant* involved a similar series of crimes: a kidnapping in a motor vehicle, a sexual assault and a subsequent continuation of the kidnapping, with the defendant driving around and threatening the victim before releasing her. *Id.* ¶ 2, 819 A.2d at 1006–07. On those facts, the State charged and the jury convicted the defendant of two kidnappings. *Id.* ¶¶ 3, 11, 819 A.2d at 1007, 1008. We affirmed, holding that an abduction in a motor vehicle, followed by a gross sexual assault, followed by a continued restraint of the victim in the motor vehicle, supported conviction for two separate kidnapping charges, although in a case where consecutive sentencing was not an issue on appeal. *Id.* ¶¶ 29–30, 819 A.2d at 1011. With the *Merchant* precedent available, the State withdrew its concession during oral argument, and maintained that the consecutive sentencing was appropriate in this case.

[¶ 33] Based on *Merchant,* the kidnapping of the victim that continued after the sexual assault was a separate crime. The purpose of this kidnapping may have been to terrorize the victim or worse. It certainly did not "facilitate" the already completed sexual assault. The subsequent kidnapping was the kidnapping considered by the jury when reducing the kidnapping from Class A to Class B because of the victim's release at the end of her ordeal. This kidnapping, after the sexual assault, was appropriate for consecutive sentencing, even if the consecutive sentencing limits in section 1256(3)(B) had applied to the gross sexual assault charge. How the kidnapping after the sexual assault, when Commeau continued to restrain and terrorize his victim, facilitated the sexual assault, is not explained in the dissent.

[¶ 34] The trial court's treatment of the gross sexual assault and the kidnapping as separate criminal acts is supported by modern views of crimes involving forced sexual acts. Current scholarship indicates that the principal motivation for such acts is dominance, brutalization, and exercise of physical and psychological power over the victim. *See* Dorothy E. Roberts, *Rape, Violence, and Women's Autonomy,* 69 CHI.-KENT L. REV. 359, 370 (1993) ("Rape is part of a system in which women's submission, humiliation, violation, and injury define sexual excitement."); Kristin Bumiller, *Rape as a Legal Symbol: An Essay on Sexual Violence and Racism,* 42 U. MIAMI L. REV. 75, 81 (1987) ("Rape is an act of violence similar to other crimes of physical assault, but the meaning of this violence is unmistakably the demonstration of power over women."); A. Nicholas Groth et al., *Rape: Power, Anger, and Sexuality,* 134 AM. J. PSYCHIATRY 1239, 1240 (1977) ("Rape is concerned much more with status, aggression, control, and dominance than with sensual pleasure or sexual satisfaction."). *See also State v. Fleming,* 644 A.2d 1034, 1035–36 (Me.1994) (holding that attempted murder after a brutal rape is a separate crime,

---

14. If the limits of section 1256(3)(B) do not apply to sentencing on one charge, it makes no difference whether the exempt charge is the first charge sentenced or the second. In *Pineo,* the sentence on the crime with the mens rea element, aggravated assault, was the first sentence imposed. 2002 ME 93, ¶ 5, 798 A.2d at 1096. In *Horr,* the sentence on the crime with the mens rea element, theft, was the last sentence imposed. 2003 ME 110, ¶¶ 3, 5, 831 A.2d at 409, 410.

appropriately subject to consecutive sentencing).

[¶ 35] Commeau's kidnapping of the victim, grabbing her, forcing her into her vehicle, pulling her hair painfully, forcing her to drive and do as he wished—before and after his sexual attack—was a separate criminal act involving power, dominance, and brutalization of the victim. The trial court properly determined that the kidnapping achieved its own separate criminal purpose of degradation and submission. The fact that Commeau, in another act of power, forced the victim to engage in a sexual act does not diminish the seriousness or separateness of the kidnapping.

[¶ 36] The sentencing court was not compelled to find that the *only* purpose of Commeau's kidnapping was to facilitate his sexual assault. *Horr*, 2003 ME 110, ¶ 11, 831 A.2d at 411; *see also Pineo*, 2002 ME 93, ¶ 13, 798 A.2d at 1098–99 (noting unintentional crimes have no criminal purpose). The dissent supports a contrary result only by ignoring our recent precedents and the facts of this case supporting imposition of the consecutive sentence.

DANA, J., with whom CALKINS, J., joins, dissenting.

[¶ 37] We respectfully dissent.

[¶ 38] Maine law presumes that sentencing courts will impose multiple terms of imprisonment concurrently. 17-A M.R.S.A. § 1256(2) (1983 & Supp.2003); *State v. Michaud*, 590 A.2d 538, 543 (Me. 1991). However, the law does permit the imposition of consecutive sentences in a limited number of circumstances. 17-A M.R.S.A. § 1256(2). These include cases where the convictions are for offenses based on different conduct, or arise from different criminal episodes. 17-A

M.R.S.A. § 1256(2)(A) (1983). The court might also determine that the seriousness of the criminal conduct, or the defendant's criminal record, warrant consecutive sentencing. 17-A M.R.S.A. § 1256(2)(D) (1983). The Superior Court relied upon both these aggravating factors in support of the consecutive sentences it imposed on Commeau.

[¶ 39] The Legislature, however, has enacted several exceptions placing limits on consecutive sentencing. Section 1256(3)(B) provides that "[a] defendant may not be sentenced to consecutive terms for crimes arising out of the same criminal episode when ... [o]ne crime consists only of a conspiracy, attempt, solicitation, or other form of preparation to commit, *or facilitation of,* the other." 17-A M.R.S.A. § 1256(3)(B) (1983) (emphasis added). Commeau contends that his kidnapping simply facilitated the commission of the sexual assault, and therefore his case fits squarely within the exception. In its brief the State concedes that "[t]he indictment alleged, and the evidence clearly established in this case, that the motivation for the kidnapping was the subsequent commission of a sexual assault." [15]

[¶ 40] We have addressed the application of section 1256(3)(B) to consecutive sentences for kidnapping and sexual assault in two cases with facts very similar to this case. *State v. Tellier*, 580 A.2d 1333 (Me. 1990); *State v. Bunker*, 436 A.2d 413 (Me. 1981). In *Bunker*, we invalidated a consecutive sentence imposed for kidnapping when a man lured a ten-year-old girl away from a playground, drove thirteen miles before raping her, and then returned her to the playground. 436 A.2d at 414. In concluding that the kidnapping was a facilitative crime in that case we focused "upon the purpose for which the defendant en-

15. During oral argument, the State was pre-

vailed upon to withdraw this concession.

gaged in criminal conduct." *Id.* at 419. Despite the fact that Bunker persuaded the girl to get in his car on a pretext, we found no evidence indicating that he restrained her for any purpose other than committing sexual assault. *Id.*

[¶ 41] In *Tellier,* we struck down consecutive sentences imposed for kidnapping and unlawful sexual contact. 580 A.2d at 1334. There the defendant inveigled a ten-year-old girl into his car on the pretext of helping him pick out flowers for his wife. *Id.* He drove her twenty-one miles to a rural area where he molested her. *Id.* He then beat and choked her and left her unconscious by the side of the road. *Id.* We applied the *"Bunker* purpose test" and held that it was error to impose consecutive sentences for the kidnapping and the unlawful sexual contact, although we did uphold a consecutive sentence imposed for aggravated assault. *Id.* at 1335–36.

[¶ 42] In our view, *Bunker* and *Tellier* stand for the proposition that section 1256(3)(B) means that, when a defendant kidnaps a victim for the apparent purpose of sexually assaulting her, unless the sentencing court states on the record that the kidnapping was not solely for that purpose, consecutive sentences should not be imposed. In this case the court did not make such a determination; thus, in keeping with the principle of stare decisis, we should vacate the sentences and remand for resentencing. Given these precedents, in our view it was obvious error to impose consecutive sentences on these facts without fully explaining why the kidnapping was not entirely facilitative of the gross sexual assault.

[¶ 43] The Court avoids this result today by declaring that the requirement to "state its reasons" for imposing a consecutive sentence "on the record" set forth in sub-section (4) applies only to the considerations set forth in subsection (2), and not to the considerations in the intervening subsection (3). Setting aside the fact that consecutive sentences only are permitted if the sentencing court finds that the circumstances set forth in section 1256(3) are not present, the Court today is interpreting 17–A M.R.S.A. § 1256(4) (1983) as though it read:

> Unless the court sets forth in detail for the record the findings *described in subsection (2),* it shall not … [i]mpose consecutive imprisonment … .

In fact, this was the formulation of what is now subsection (4) when Samuel A. Bunker committed his rape. *See Bunker,* 436 A.2d at 417 n. 8 (quoting 17–A M.R.S.A. § 1155(3) (Supp.1978)). The Legislature, however, changed the formulation and order of the sections the same year to make it clear that

> If the court decides to impose consecutive sentences, it shall state its reasons for doing so on the record or in the sentences.

17–M.R.S.A. § 1256(4). Having relieved the trial court of its duty to fully comply with subsection (4), the appellate court now speculates or assumes that the factors set forth in subsection (3) are not present or, more specifically, that this serial rapist had other conduct on his mind when he kidnapped the victim.

[¶ 44] We would follow the statute and our case law and remand for resentencing.