1999 ME 113

**STATE of Maine**

v.

**Christopher BRANN.**

Supreme Judicial Court of Maine.

Submitted on Briefs June 17, 1999.

Decided July 19, 1999.

David W. Crook, District Attorney, Brian Mahany, Asst. Dist. Atty., Augusta, for the State.

C.H. Spurling, Spurling Law Offices, Gardiner, for the defendant.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, and ALEXANDER, JJ.

DANA, J.

[¶ 1] Christopher Brann appeals from a judgment of conviction of operating under the influence entered on a conditional guilty plea in the Superior Court (Kennebec County, *Studstrup, J.*). On appeal, Brann contends that the District Court (Augusta, *Perry, J.*) erred in denying his motion to suppress. Because we agree with Brann that a statement he made to the police before a *Miranda* warning was administered should have been suppressed, we vacate the judgment.

[¶ 2] At the suppression hearing, Officer Marcus Niedner of the Hallowell Police Department testified as follows: On May 15, 1997, he was called to the scene of a one-car accident. He found a car that apparently had gone through a stop sign

and wound up on an embankment. There was significant damage, at least $1000 worth, to the car and the torn-up lawn on the embankment. A woman came out from one of the adjacent buildings and told Niedner, "the driver just ran around the back of my house." He and another officer went behind the house and saw a man running. Niedner told the man to stop; he did, and Niedner placed him face-down on the ground and handcuffed him. The suspect's face was bleeding and he smelled of alcohol. Niedner recognized him as Christopher Brann, with whom Niedner had gone to high school.

[¶ 3] Niedner took Brann back to his cruiser at the scene of the accident. Niedner told Brann he was under arrest, but he could not recall at what point he did so. Brann refused medical treatment at the scene. Niedner did not perform field sobriety tests because Brann was having a hard time standing up, was very confused, and was bleeding. Because Brann was bleeding from the mouth, Niedner concluded he could not administer an intoxilyzer test, and so he decided to bring Brann to the Kennebec Valley Medical Center for a blood test and for medical "clearance" so he could be brought to jail. At some point, apparently before they arrived at the hospital and probably while they were still at the scene, Niedner "asked Mr. Brann who was driving. He stated he was the driver of the vehicle." Niedner did not give Brann a *Miranda* warning until they were at the hospital.

[¶ 4] At the hospital, Niedner asked Brann if he would be willing to take a blood test, and Brann said he would. While the nurse was drawing Brann's blood, or immediately after, Niedner read him the implied consent notice detailing the consequences of his refusal to submit to the test. Niedner explained, "I was actually supposed to read it to you before, but you'd already said no problem takin' the test, so I'm readin' it to you now." After Niedner gave him the *Miranda* warning, Brann refused to answer any questions and asked to speak to an attorney.

[¶ 5] Brann was charged by complaint with OUI while having a blood-alcohol level of 0.15% or more. 29–A M.R.S.A. § 2411(1), (5)(A)(3)(a)(i) (1996).[1] He filed a motion to suppress, which the District Court denied. The case was transferred to Superior Court, as Brann had demanded a jury trial. Brann entered a conditional guilty plea pursuant to M.R.Crim. P. 11(a)(2) and the court entered judgment accordingly.[2]

## I. PROBABLE CAUSE TO ARREST

[¶ 6] Brann argues that the trial court erred in concluding that Officer Niedner had probable cause to arrest him. We independently review the trial court's legal conclusion that undisputed historical facts amounted to probable cause. *See State v. Cilley*, 1998 ME 34, ¶ 10, 707 A.2d 79, 83. The court found that when Niedner stopped Brann and handcuffed him, he did not know that Brann was under the

---

1. 29–A M.R.S.A. § 2411 provides in pertinent part:
   **1. Offense.** A person commits OUI, which is a Class D crime unless otherwise provided, if that person operates a motor vehicle:
   A. While under the influence of intoxicants; or
   B. While having a blood-alcohol level of 0.08% or more.
   . . . .
   **5. Penalties.** The following minimum penalties apply and may not be suspended:
   A. For a person having no previous OUI offenses within a 10–year period:
   (1) A fine of not less than $400 . . .;
   (2) A court-ordered suspension of a driver's license for a period of 90 days; and
   (3) A period of incarceration as follows:
   (a) Not less than 48 hours when the person:
   (i) Was tested as having a blood-alcohol level of 0.15% or more . . . .

2. Brann was sentenced to the statutory minimum of a $400 fine, a ninety-day license suspension, and forty-eight hours in jail. *See* 29–A M.R.S.A. § 2411(5)(A)(1)–(3)(a)(i).

influence, but still possessed probable cause to believe Brann had committed the crimes of driving to endanger, 29–A M.R.S.A. § 2413(1) (1996);[3] failing to notify the property owner after a property damage accident, *id.* § 2255;[4] or failing to report an accident, *id.* § 2251.[5]

[¶ 7] The undisputed facts support the court's conclusion. When he arrested Brann by stopping and handcuffing him, Niedner knew that there had just been a one-car property damage accident; a witness had just told him that the driver had fled behind her house; and proceeding behind the house, he had found a man running away. Although Niedner could not be certain that Brann was the driver, certainty was not required. "The quantum of proof necessary to establish probable cause is less than the level of a fair preponderance of the evidence." *Cilley,* 1998 ME 34, ¶ 11, 707 A.2d at 83 (citing *Texas v. Brown,* 460 U.S. 730, 742, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983)). Officer Niedner had probable cause to believe the driver of the car had committed at least one motor vehicle offense and probable cause to believe Brann was that driver. He was therefore justified in placing Brann under arrest.

## II. DUE PROCESS CHALLENGE TO BLOOD TEST

[¶ 8] Brann contends that the blood test results should have been suppressed as fundamentally unfair. He argues that he was denied due process when the test was administered without the notice, formerly required by statute, of the consequences of his refusal to submit. *See* 29–A M.R.S.A. § 2521(3) (1996), *repealed and replaced by* P.L.1997, ch. 357, § 1 (effective Sept. 19, 1997).[6]

[¶ 9] Brann relies primarily on our decision in *State v. Stade,* 683 A.2d 164 (Me. 1996). In *Stade,* the defendant submitted to a blood-alcohol test after the officer, a friend of his, gave him misleading assurances that he should not worry about losing his license because he could obtain a conditional license to drive to work. *See id.* at 165. The officer did not read him

---

3. 29–A M.R.S.A. § 2413(1) provides:

   A person commits a Class E crime if, with criminal negligence as defined in Title 17–A, that person drives a motor vehicle in any place in a manner that endangers the property of another or a person, including the operator or passenger in the motor vehicle being driven.

4. 29–A M.R.S.A. § 2255 provides in pertinent part:

   **1. Notification.** The operator of a vehicle involved in an accident anywhere that results in property damage shall take reasonable steps to notify the owner of that property of the accident.

   . . . .

   **3. Violation.** A person commits a Class E crime if that person fails to comply with this section.

5. 29–A M.R.S.A. § 2251 provides in pertinent part:

   **1. Definition.** As used in this section, "reportable accident" means an accident on a public way or a place where public traffic may reasonably be anticipated, resulting in ... apparent property damage of $500 or more.

2. **Report required.** A reportable accident must be reported immediately by the quickest method of communication to [the state or local police or county sheriff]. The accident must be reported by:
   **A.** The operator of an involved vehicle
   . . . .
   . . . .
   **8. Violation.** A person commits a Class E crime if that person:
   **A.** Is required to make an oral or written report and knowingly fails to do so within the time required . . . .

6. 29–A M.R.S.A. § 2521(3) provided:

   Before a test is given, the law enforcement officer shall inform the person that failure to submit to and complete a test will:
   **A.** Result in suspension of that person's driver's license for a period up to 6 years;
   **B.** Be admissible in evidence at a trial for operating under the influence of intoxicants; and
   **C.** Be considered an aggravating factor at sentencing if the person is convicted of operating under the influence of intoxicants that, in addition to other penalties, will subject the person to a mandatory minimum period of incarceration.

the implied consent notice. *See id.* We held that the admission of the test would be fundamentally unfair and affirmed the order of the District Court suppressing the evidence. *See id.* at 166.

[¶ 10] *Stade* is distinguishable from this case. The only similarity is that Brann, like Stade, did not receive the implied consent notice before he submitted to the test. The central fact in *Stade*, the misleading information about the consequences of the test, is not present here. Officer Niedner merely asked Brann if he would be willing to take a test; there is no indication in the record that he said anything about the consequences of submitting to or refusing the test. Nor is there evidence suggesting that Brann was in any way tricked or coerced into submitting to the test.

[¶ 11] The Legislature has directed that "A test result may not be excluded as evidence in a proceeding before an administrative officer or court *solely* as a result of the failure of the law enforcement officer to comply with the notice of subsection 3." 29–A M.R.S.A. § 2521(4) (1996) (emphasis added). We find no fundamental unfairness in following that directive. *Stade* is not to the contrary, because the failure to give the implied consent notice was not the sole, or even the primary, reason for suppressing the test results in that case. The trial court did not err in refusing to suppress the results of Brann's blood test on due process grounds.

### III. STATEMENT PRIOR TO MIRANDA WARNING

[¶ 12] Brann argues that his admission that he was the driver should have been suppressed because Officer Niedner had not yet advised him of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Although the trial court made no specific finding that Brann was in custody when questioned, the parties agree that he was. The State thus bears the burden of establishing by a preponderance of the evidence

that a *Miranda* warning was not required. *See State v. Leone*, 581 A.2d 394, 397 (Me. 1990).

[¶ 13] The State argues that the "routine booking" or "administrative question" exception to *Miranda* applies. Although it has never been specifically adopted by a majority of the United States Supreme Court, *see Pennsylvania v. Muniz*, 496 U.S. 582, 601–02, 110 S.Ct. 2638, 110 L.Ed.2d 528 (1990) (opinion of Brennan, J., with 3 justices concurring and 3 justices concurring in the result), that exception has long been established in Maine and the First Circuit. *See United States v. Shea*, 150 F.3d 44, 48 (1st Cir.1998); *United States v. Doe*, 878 F.2d 1546, 1551 (1st Cir.1989); *State v. Rossignol*, 627 A.2d 524, 526 (Me.1993); *State v. Simoneau*, 402 A.2d 870, 873 (Me.1979). "Administrative questions, not likely to elicit an incriminating response, include those 'routine booking questions' normally attending arrest which seek only 'biographical data necessary to complete booking or pretrial services,' such as 'name, address, height, weight, eye color, date of birth, and current age ....'" *Rossignol*, 627 A.2d at 526 (quoting *Muniz*, 496 U.S. at 601, 110 S.Ct. 2638). Even before a plurality of the Supreme Court spoke of "biographical data" in *Muniz*, we had called the exception "the biographical data exception." *State v. Sumabat*, 566 A.2d 1081, 1083 (Me.1989) (citing *United States v. Downing*, 665 F.2d 404, 406 (1st Cir.1981)).

[¶ 14] Officer Niedner's question to Brann had nothing to do with biographical data or other information required for booking. "I asked Mr. Brann who was driving. He stated he was the driver of the vehicle." In *Rossignol*, we found that the exception did not apply when a state trooper asked an OUI defendant "whose vehicle were you found in?" after she was found intoxicated in a car parked in the middle of the road. "This question was reasonably likely to elicit a response from Rossignol material to the proof of her op-

eration of that vehicle, an element of the offense of which Rossignol was a suspect." 627 A.2d at 526. The same is true here: Niedner's question went directly to an element of the offense, indeed to the only element that reasonably could be disputed since Brann was plainly under the influence. The routine booking exception is not applicable.

[¶ 15] The State also argues that a "public policy" exception to *Miranda* is applicable. That argument is without merit. It appears that no court, state or federal, has ever recognized a public policy exception to *Miranda*. There is a narrow public *safety* exception which we and the Supreme Court have applied where the safety of officers and the public is so immediately threatened that brief questioning prior to giving warnings must be allowed. *See New York v. Quarles*, 467 U.S. 649, 658–59, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984) (gun left in supermarket); *Leone*, 581 A.2d at 397 (gun and possible accomplice in heavily wooded area). No such threat to the safety of the public or the officer was present here, so the public safety exception is inapplicable.

[¶ 16] Because no exception to *Miranda* applies, the trial court erred in refusing to suppress Brann's statement.[7]

The entry is:

Judgment vacated. Remanded to the Superior Court for further proceedings consistent with this opinion.

---

7. A harmless error analysis would be improper because the case did not go to trial and because the parties certified, as required by M.R.Crim. P. 11(a)(2), that the case is not appropriate for the application of the harmless error doctrine.