2003 ME 13

**STATE of Maine**

v.

**Donna GRIFFIN.**

Supreme Judicial Court of Maine.

Argued: Nov. 12, 2002.

Decided: Jan. 31, 2003.

R. Christopher Almy, District Attorney (orally), C. Daniel Wood, Asst. Dist. Atty., Bangor, for State.

Stephen C. Smith, Bangor, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

ALEXANDER, J.

[¶ 1] Donna Griffin appeals from a judgment entered on her conditional guilty plea by the Superior Court (Penobscot County, *Hjelm, J.*) convicting her of operating in violation of the habitual offender law (Class C), 29–A M.R.S.A. § 2557(1) (Supp. 2002) and theft (Class E), 17–A M.R.S.A. § 353(1) (1983). Griffin argues that the Superior Court (*Mead, J.*) erred in denying her motion to suppress her statement admitting to operation of her motor vehicle because Griffin's statement was the product of a custodial interrogation without the requisite *Miranda*[1] warnings. We vacate the habitual offender law conviction.

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

## I. CASE HISTORY

[¶ 2] The Superior Court found that Griffin had "spontaneously volunteered" the information that she had operated her motor vehicle. That finding is the focus of Griffin's challenge on this appeal. Because the fact-finding is challenged, we view the evidence presented at the suppression hearing most favorably to the trial court's result. *State v. O'Rourke,* 2001 ME 163, ¶ 12, 792 A.2d 262, 265.

[¶ 3] Viewed from that perspective, the evidence indicates that on September 13, 2000, Griffin was apprehended for shoplifting at a Wal–Mart store in Bangor. A Bangor police officer arrived and began questioning Griffin. There appears to be no serious dispute that this questioning was in a custodial setting. Initially the officer asked Griffin her name and date of birth. Griffin advised the officer that her name was Donna Davidson. The officer then asked Griffin for identification. She indicated that she did not have any, but that she had identification in her car. The officer advised Griffin that if she could not provide identification she would be taken to jail on the theft charge. Griffin and the officer then walked from the Wal–Mart store to Griffin's car to obtain her identification. Going toward the vehicle, Griffin advised the officer that she was from Jonesboro and that she was traveling to Winslow to participate in a drug treatment program. Griffin also advised the officer that she had previously been arrested for drug related offenses.

[¶ 4] At the vehicle, Griffin produced, as identification, an ATM card with the name Donna Griffin. When asked about the discrepancy, Griffin advised that the difference was between a maiden name and a married name. The officer then asked Griffin for a driver's license. Griffin stated that she did not have a driver's license, and that she was under suspension. The officer then asked Griffin how she had come to the Wal–Mart parking lot that day. Griffin stated that she had driven to the lot.[2]

[¶ 5] In response to his radio inquiry, the officer learned that Griffin's license was suspended in accordance with the habitual offender law, that the plates on her vehicle were not the plates for that vehicle and that there was an outstanding warrant for Griffin's arrest on an unrelated matter. Griffin was then arrested. Subsequently, she was charged with violation of the habitual offender law and theft.

[¶ 6] In his testimony, the Bangor officer indicated some uncertainty as to whether he had asked Griffin how she had come to the parking lot before or after he had learned that there was a warrant for her arrest and that she was suspended under the habitual offender law. Although the Superior Court did not make an express finding on this point, given its ultimate finding, it must have accepted the officer's statement that he asked Griffin how she had traveled to the parking lot before he learned that there was a warrant for her arrest and that she was suspended under the habitual offender law.

[¶ 7] Based on this evidence, the trial court reached its conclusion that the admission that Griffin had driven to the parking lot was part of statements that were "spontaneously volunteered." Griffin entered a conditional plea to the habitual

---

**2.** The application of the *corpus delicti* rule would not assist Griffin in her defense because, pursuant to 29–A M.R.S.A. § 2431(4) (Supp.2002), an admission of operation would be sufficient to support a guilty verdict on a habitual offender charge. *See State v. Deschenes,* 2001 ME 136, ¶ 7, 780 A.2d 295, 298 (citing *State v. Burgess,* 2001 ME 117, ¶ 14, 776 A.2d 1223, 1229).

offender charge, M.R.Crim. P. 11(a)(2), and then brought this appeal.

## II. DISCUSSION

[¶ 8] The record supports the trial court's finding that some of the information that Griffin provided to the officer was spontaneously volunteered. However, Griffin's admission to operating was not spontaneously volunteered. According to the officer's testimony, Griffin admitted that she had driven to the parking lot only in response to a direct question by the officer. Where there is no dispute that Griffin was in custody, the State has the burden of establishing, by a preponderance of the evidence, that no *Miranda* warning was required as a prerequisite for use of Griffin's statement that she had driven her motor vehicle to the parking lot. *State v. Brann*, 1999 ME 113, ¶ 12, 736 A.2d 251, 255; *State v. Leone*, 581 A.2d 394, 397 (Me.1990).

[¶ 9] Even in a custodial situation, an officer may ask questions designed to identify the suspect, check her identification and resolve any health or safety concerns regarding the suspect or others. This inquiry, called "administrative questions" or "routine booking questions" to someone in custody, is appropriate where it seeks "biographical data necessary to complete booking or pretrial services, such as name, address, height, weight, eye color, date of birth, and current age." *Brann*, 1999 ME 113, ¶ 13, 736 A.2d at 255 (internal quotation marks omitted); (quoting *State v. Rossignol*, 627 A.2d 524, 526 (Me.1993)). The question as to how Griffin "got there that day" was not designed to elicit "biographical data" such as we addressed in *Brann* or *Rossignol*. It was asked before the officer was aware from his dispatcher that Griffin was suspended

under the habitual offender law or that there was a warrant for her arrest, but it was asked directly after Griffin herself had advised the officer that she did not have a driver's license and that her operating privileges were under suspension.

[¶ 10] Griffin's statement, taking the evidence most favorably to the State, cannot be viewed as "spontaneously volunteered." Because the statement was made in response to a question designed to learn something more than biographical data, some other justification for the question leading to Griffin's response must be identified.

[¶ 11] As noted above, under our precedents, it is the State's burden to establish, by preponderance of the evidence, some other justification for use of Griffin's statement. Here, there is no evidence indicating that the officer's question might have been asked to determine if others might have been involved in a joint shoplifting effort with Griffin, or if others may have been with Griffin who might have been able to operate her automobile had the officer released her. The officer's prior conversation with Griffin, indicating that she was on her way from Jonesport to Winslow, and the fact that there were two large dogs in the car, made it highly unlikely that the officer would have considered, in his inquiry, that others might have been in the vehicle. There also appears no basis for the officer to ask the question out of concern for the health or safety of Griffin or others. Having been advised that Griffin did not have a driver's license and that her operating privileges were under suspension, the officer should have known that his question to Griffin as to "how she got there" was reasonably likely to elicit an incriminating response.

[¶ 12] Because the "biographical data" or

the "spontaneous utterance"[3] exceptions to the *Miranda* rule are not demonstrated on this record, and no other exception is suggested by the court's findings, the State's brief or a fair reading of the evidence, the State has failed to meets its burden of demonstrating an exception to the *Miranda* requirement. Accordingly, the record does not support the court's finding that an exception to the *Miranda* requirement existed. For the same reasons as we addressed in *State v. Bránn*, the order denying the motion to suppress must be vacated. Griffin's statement that she had operated her motor vehicle to get to the parking lot should have been suppressed for violation of the *Miranda* rule.

The entry is:

Judgment of conviction for violation of the habitual offender law vacated. Remanded for further proceedings consistent with this opinion. Judgment of conviction for theft affirmed.

---

**3.** *See Rhode Island v. Innis,* 446 U.S. 291, 300–03, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980).