STATE OF MAINE
CUMBERLAND, ss.

UNIFIED CRIMINAL DOCKET
No. CR-12-4570
TDW_cum- 1/29/2013

STATE OF MAINE

v.                                                    ORDER

JOSHUA NELSON,

        Defendant

Defendant Joshua Nelson is charged with two misdemeanors: a second offense OUI and a failure to stop when requested by a police officer. Before the court is his motion to suppress statements he made at the Gorham Police Station while he was waiting for an intoxilyzer test and while that test was being administered.

A hearing was scheduled for December 20, 2012. By agreement at the hearing, the parties did not present testimony but instead submitted an audio and video recording of the events in the intoxilyzer room during the early morning hours on July 7, 2012. The State and the defense subsequently each submitted legal memoranda arguing their respective positions.

There is no dispute that Nelson was in custody, having already been arrested at that time, and there is no dispute that he had not been advised of his Miranda rights. The major issue, on which the State bears the burden of proof by a preponderance of the evidence, is whether Nelson's statements were spontaneous or whether they were the product of police questioning.

From its review of the recording, the court finds as follows:

During the time that Nelson was in the intoxilyzer room, he was very talkative. He was in the intoxilyzer room for approximately 51 minutes. Officer Hinkley (the arresting officer) was present the entire time, and another officer was in the room almost the entire time. The interchange between Nelson and the officers consisted of booking questions,[1] discussions of ATVs, discussions of the intoxilyzer procedure, discussions of unrelated subjects, and some discussion of the incident for which Nelson had been arrested. Many of the exchanges were initiated by Nelson and a few were initiated by the officers.

The court finds that, although certain questions beyond booking questions were asked by the officers, the officers were not engaged in an effort to interrogate Nelson or elicit admissions from him. Instead they were engaging in an unguarded conversation with a man who was talking to them in a friendly manner, variously engaging the officers in innocent conversation, apologizing to them, bemoaning his fate (e.g., "I'm screwed"), and asking the officers if there was any way he could avoid being charged with an OUI.

Specifically, the court finds that Nelson's statement to the effect that the breathalyzer test "was going to come out dirty" was a spontaneous statement not made in response to any questioning or the functional equivalent of questioning by either officer.[2] That statement is not subject to suppression. State v. Dominique, 2008 ME 180 ¶ 13, 960 A.2d 1160. See State v. Price, 406 A.2d 883, 885 (Me. 1979) (officer has no duty to stop defendant from making spontaneous statement).

---

[1] No Miranda warning need be given when police are asking questions related to a defendant's identity or otherwise necessary for booking or for the administration of a breath test. See State v. Reese, 2010 ME 30 ¶ 8, 991 A.2d 806.

[2] This statement was made at approximately 3:08 am, seven minutes after Nelson had entered the intoxilyzer room.

Hinkley then asked Nelson what he meant, which eventually elicited the statement that the test would be "more than .08 for sure." This latter statement is also not subject to suppression because clarifying questions made in response to ambiguous statements volunteered by a suspect do not constitute interrogation. State v. Dominique, 2008 ME 180 ¶ 14.

Nelson volunteered other statements that were not elicited by police questioning or its functional equivalent. At a later point he said, "Too bad I had some beers and tried to drive." After the breath test was administered, he asked, "Now can you tell me how much I failed by?"[3] Near the end of the session Nelson also joked that he could say he wasn't drinking, only that he had had some alcohol gum.

Nelson also volunteered statements on two other subjects that were not elicited by police questioning or the functional equivalent of such questioning. At several points he admitted that he had initially attempted to evade arrest, and he complimented Hinkley for chasing him down. He also initiated several attempts to persuade the officers not to charge him with OUI, specifically asking the officers whether they could charge him with something else instead and whether there was any way they could "no complaint" the charges. All of these statements were not the product of police questioning and are not subject to suppression.

The interchange between Nelson and the officers was not continuous but was punctuated by pauses. Some of the intermittent exchanges included questions by the officers that elicited responses that, although not highly incriminating compared to Nelson's volunteered statements, are nevertheless problematic. As noted above, the officers were not engaged in a systematic or calculated attempt to elicit admissions from

---

[3] After that volunteered statement, one of the officers asked Nelson what he thought his test result would be and he answered 0.12. In that instance, the officer's question was not a clarifying question, and Nelson's .12 answer shall be suppressed.

Nelson, but their isolated questions nevertheless violated <u>Miranda</u>, and Nelson's statements in response to those questions shall be suppressed. <u>See</u> <u>State v. Griffin</u>, 2003 ME 13 ¶¶ 8, 12, 814 A.2d 1003 (as opposed to defendant's volunteered statements, her statement in response to a police question should have been suppressed).

The statements that shall be suppressed are the following:

• Nelson's response to the question whether he had "done an intox before."

• Nelson's responses to whether he had been driving a "Sportsman" model ATV and to other questions relating to the model and use of his ATV.

• Nelson's response, to the extent that it was intelligible (the court could not make out what he said), to the question "who was that with you?"

• Nelson's responses to the questions of whether he was coming from Winslow Road (which he had already volunteered) and why he needed fuel.

• Nelson's response to the question of whether he had any other alcohol-related offenses.[4]

• Nelson's response to the question of whether he had been drinking beer or liquor.[5]

At one point one of the officers told Nelson that they appreciated his cooperation. In context, that statement was directed at the fact that (after initially attempting to evade arrest) Nelson was not giving the officers a hard time and his

---

[4] The answer to that question would also be potentially inadmissible, particularly if Nelson stipulates to his prior offense or requests a separate trial on that issue, see M.R.Crim.P. 26(e), in which case information about the prior offense would potentially be subject to exclusion under Rule 403 during any trial on the basic question of whether Nelson had engaged in OUI. The court notes that in some cases questions about a suspect's prior record may only be for identification purposes, see <u>State v. Reese</u>, 2010 ME 30 ¶ 8, but in this case the prior offense is an element of the charge against Nelson, so his statements as to his prior OUI conviction will be suppressed.

[5] This question was asked between attempts by Nelson to blow into the intoxilyzer and occurred a considerable time after Nelson had volunteered that it was "too bad I had some beers and tried to drive."

4

demeanor was very affable. Nelson's friendly demeanor and his various admissions as to the offenses charged may simply reflect his character or may have been intended to further his hope for some leniency by persuading the officers that he was a good guy. In either event, his admissions did not result in any way from coercion or trickery on the part of the officers.

Moreover, no promise or suggestion of leniency was ever communicated. Indeed, the officers good-naturedly but firmly rebuffed Nelson when he initiated discussions on whether he could avoid an OUI charge. In context, as noted above, the officer's statement about cooperation was not intended to and did not elicit admissions from Nelson. Nelson thereafter made a statement that was in the same vein as his other spontaneous statements ("I was hoping to get away. I'm screwed"), but this statement – like his prior admissions – was a volunteered statement that was not the product of questioning or its functional equivalent.

Nelson has also raised the contention that his statements in the intoxilyzer room were involuntary. On this issue, the State must prove voluntariness beyond a reasonable doubt. A defendant's statements are voluntary if they result from the free choice of a rational mind, are not the product of coercive police conduct, and if under the circumstances the admission of those statements at trial would be fundamentally fair. State v. Coombs, 1998 ME 1 ¶ 10, 704 A.2d 387. In this case the audio and videotape of the interaction in the intoxilyzer room proves beyond a reasonable doubt that no coercion or trickery was used; that Nelson was not emotionally, physically, or psychologically impaired; that Nelson was joking around with the officers throughout; and that all of his statements were freely made and were the product of a rational mind. Under all the circumstances, the court, having excluded Nelson's statements made in

5

response to police questions, finds that the admission of Nelson's volunteered statements would be fundamentally fair.

For the foregoing reasons, defendant's motion to suppress is granted as to the specific statements set forth above that were made in response to police questions. Defendant's motion to suppress the statements set forth above that were volunteered is denied.

Dated: January 29, 2013

Thomas D. Warren
Justice, Superior Court