STATE OF MAINE                                    DISTRICT COURT
SAGADAHOC COUNTY, SS.                             WEST BATH
                                                 Docket No. SAG CR-16-672


STATE OF MAINE                 )
                               )
                               )
        v.                     )          **ORDER ON DEFENDANT'S**
                               )          **MOTION TO SUPPRESS**
                               )
MARK BURSON,                   )
        Defendant.             )


        This matter is before the court on Defendant's Motion to Suppress. A hearing
was held on the matter on December 21, 2016. The court also reviewed two videos from
the police station, one in the sally port, the other in the booking room.

        Defendant moves to suppress the result of a breath test obtained on August 7,
2016 as well as any and all statements made by Defendant while at the police station on
the same date. For the reasons below, the motion as to the breath test is DENIED; the
motion as to Defendant's statements is GRANTED in part and DENIED in part.


## Findings of Fact

        From the hearing and review of the video, the court finds the following:

        Defendant was arrested on August 7, 2016 for suspicion of OUI after rear-ending
a Topsham Police cruiser. Officer Cook transported Defendant to the Topsham Police
Station. Testimony and video shows that Defendant entered through the sally port.
While Officer Cook went to secure his gun, Defendant fell. Defendant was assisted to
his feet with the help of the Topsham Fire Department, and escorted into the booking
room, where he was seated on a bench. The rest of the relevant interactions occurred
solely between Defendant and Officer Cook.

        Through the approximate hour that Defendant was in the booking room, there
were numerous conversations between Defendant and Officer Cook. Defendant initiates
most of these conversations; Officer Cook initiates some. Some conversations are
relevant to the pending charges against the Defendant and some are not. The video

1

shows that Officer Cook conducted himself with the utmost professionalism and patience throughout the entire interaction with Defendant.

After Officer Cook had a phone conversation relaying the events leading up to the arrest, Defendant asked Officer Cook if he could use the bathroom. Officer Cook stated to Defendant that he would need him to take a breath test and asked Defendant if he was "willing to do that?" Defendant stated "Yeah," but that it would be "hard." Officer Cook asked him if he could take a deep breath and blow, to which Defendant responded "yeah." Officer Cook stated that the alternative would be a blood test. Defendant stated, "Alright, though can I use the bathroom first?" Officer Cook escorted Defendant to the bathroom, and then sat him at the Intoxilyzer.

While waiting for the Intoxilyzer machine to be ready, there were numerous exchanges between Defendant and Officer Cook. The content of these conversations are discussed below. After retrieving some paperwork, Officer Cook sat down at the Intoxilyzer with Defendant at 3:30:46.[1] While obtaining biographical information such as Defendant's name and date of birth, Defendant made a statement about the urine smell of his clothes. Officer Cook asked Defendant: "are you going to be able to do this?" (indicating the Intoxilyzer) "because if not I'll have to get a blood draw from you." Defendant responded "Oh I'll do it," and that he wanted to lay down. Officer Cook told him he would be able to lay down in about 15 minutes.

At 3:41:55, Officer Cook gets up from his chair and goes to his desk, approximately ten or so feet away. This is the first and only time Officer Cook leaves the Intoxilyzer desk prior to the administration of the test. At 3:42:19, Officer Cook walks back to the Intoxilyzer desk, and he is seated by 3:42:24.

Defendant successfully completes the first breath test at 3:51:16. Defendant takes the second breath test at 3:54:09. Although he had some difficulty blowing into the hose, he was ultimately able to complete the test. The result of the test is a BAC of .35.

---

[1] This is the time-stamp of the booking video provided to the court by the parties. Both parties agree that the video was an accurate depiction of the facts. Hereinafter, all times refer to the time-stamp on this video. At this time, it is unclear whether the time –stamp reflects the accurate time of day.

2

## ANALYSIS

### I.    Breath Test

#### a.  Implied Consent

The 4th Amendment "permits warrantless breath tests incident to arrests for drunk driving." *Birchfield v. North Dakota*, 136 S. Ct. 2160, 2184 (2016). Unlike blood tests, which implicate significant privacy concerns (including the invasiveness of the procedure, the apprehension it may cause, and because the blood sample itself remains in the government's possession), breath tests are not afforded the same 4th Amendment protections. *Id.* at 2177-78. As such, the implied consent statute does not give a defendant the right to refuse to take the breathalyzer test. *See State v. Plante*, 417 A.2d 991 (Me. 1980) (holding that the operator of a vehicle has "the power, -- though not the right – to refuse to [submit to a chemical test]… The power of refusal is not, as argued by the defendant, equivalent to rights created by the federal and state constitutions").

It is undisputed that Officer Cook did not read Defendant the implied consent warnings. However, "a test result may not be excluded as evidence in a proceeding before an administrative officer or court solely as a result of the failure of the law enforcement officer to comply with the notice requirements." 29-A M.R.S. § 2521(4). Where an officer merely asks whether a defendant is willing to take the test, and the officer does not say anything about the consequences of submitting to or refusing the test, the test results should not be suppressed. *See State v. Brann*, 1999 ME 113, ¶ 10, 736 A.2d 251; *Cf State v. Stade*, 683 A.2d 164 (Me. 1996) (when a police officer gives a suspect misleading information about the consequences of taking test, or otherwise trick or coerces a defendant into taking the test, than the test should be suppressed).

Here, Defendant never indicated that he did not want to take the test. Initially, Defendant and Officer Cook had a conversation of whether Defendant would be *capable* of taking the test – i.e. whether he would be physically able to take the deep breath necessary to blow into the machine. Defendant's statement that the test would be "hard" led Officer Cook to inform Defendant that the alternative would be a blood test. Throughout the entire interaction, Defendant never showed any resistance to taking the test and never indicated that he was not interested and/or not going to take the test. Officer Cook never gave misleading information or tricked our coerced Defendant into

taking the test. Defendant consistently expressed his willingness to take the breath test, and never indicated that he did not want to take it.

### b. Reliability of the test

Defendant also argues that because Officer Cook took his "eyes off" Defendant during the 15-minute observation period prior to administering the test, the test results should be suppressed as unreliable.

"Test results are admissible unless the evidence is determined to be not sufficiently reliable." 29-A MRS § 2431(1). However, whether a breath test is administered properly is a factual issue. *State v. Pike*, 632 A.2d 132, 133 (Me. 1993); *State v. Pickering*, 462 A.2d 1151, 1156 (Me. 1983) (evidence as to the accuracy and reliability of a blood-alcohol test is an issue for the fact-finder).

The trial court, (Kennebec County, *R. Mullen, J.*) examined a similar issue last year. There the court held that the defendant had been observed for the required time, but "was not under constant, direct observation for the entire time period." *State v. Renfro*, No. CR-13-1039, Unified Criminal Docket (Kennebec Cty., July 29, 2015) 2015 Me. Super. LEXIS 265 *3. Nevertheless, the court determined that "the requisite foundational showing of reliability was made by the State, and thus the accuracy and reliability of the test result are questions for the factfinder." *Id. See also State v. Pineo*, 2002 ME 93, 798 A.2d 1093.

Defendant's first breath test occurred on the time-stamped video at 3:51:16. In the fifteen minutes directly preceding the test, Officer Cook got up from the Intoxilyzer once, at approximately 3:41:55. Officer Cook walked to a desk, approximately ten feet away. Officer Cook walked back to the Intoxilyzer a 3:42:19, and was seated again by 3:42:24. Offier Cook took his eyes off of Defendant for at most twenty-four seconds, with another few seconds between when he was facing and walking towards Defendant and when retook his seat. This court finds the State has demonstrated the requisite foundational showing of reliability of the test, and any additional arguments as to the accuracy and reliability of the test are questions for the factfinder.

Accordingly, Defendant's motion to suppress the breath test is DENIED.

## II. Defendant's Statements at the Police Station

Defendant has also moved to suppress any and all statements that Defendant made while at the police station. It is undisputed that Defendant was in custody and was never advised of his *Miranda* rights.

First, Defendant argues that all of Defendant's statements were involuntary and should be suppressed on this ground. "A defendant's statements are voluntary if they result from the free choice of a rational mind, are not the product of coercive police conduct, and if under the circumstances the admission of those statements at trial would be fundamentally fair." *State v. Nelson*, No. CR-12-4570, 2013 Me. Super. LEXIS 10, * 8 (Jan. 29, 2013) (citing *State v. Coombs*, 1998 ME 1, ¶ 10, 705 A.2d 387). The State must prove voluntariness beyond a reasonable doubt. *Id.* Here, there was no coercion or trickery, and Defendant, although clearly intoxicated, was of rational mind evidenced by his awareness of the situation he had gotten himself into and the serious consequences that may come as a result. Officer Cook did not engage in an attempt to interrogate Defendant. Accordingly, with the exception of the statements discussed below, the admission of Defendant's other statements would be fundamentally fair,[2] and will not be suppressed as involuntary statements.

Defense next argues that Defendant's statements were made as a result of an illegal interrogation. "The term interrogation includes not just express questioning, but also 'words or actions on the part of police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.'" *State v. Nixon*, 599 A.2d 66, 67 (Me. 1991) (quoting *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980)). However, "brief, neutral questions which are not part of an effort to elicit a confession or admission do not constitute '*interrogation*.'" *State v. Simoneau*, 402 A.2d 870, 873 (Me. 1979) (emphasis in original); *State v. Erskine*, No. CR-12-998, 2013 Me. Super. LEXIS 197, * 5-6 (Aug. 3, 2013). Administrative questions also do not constitute interrogation. *See State v. Rossignol*, 627 A.2d 524, 526 (Me. 1993). However, this exception should be strictly construed. *Id.* For example, the administrative question exception would not apply where questions are reasonably likely to elicit an incriminating response in that particular situation. *Id.* On

---

[2] The court does not, at this time, speculate as to whether Defendant's remaining statements would be inadmissible under other rules of evidence.

the other hand, spontaneous statements are not subject to suppression. *State v. Dominique*, 2008 ME 180, ¶ 12-13, 960 A.2d 1160. And, when a police officer asks clarifying questions of a voluntary, ambiguous statement, that question does not constitute an interrogation. *Id.* ¶ 14.

In *State v. Nelson*, the Superior Court (Cumberland County, *Warren, J.*) faced a remarkably similar set of facts. *Nelson*, No. CR-12-4570, 2013 Me. Super. LEXIS 10. Same as before this court, the defendant was in custody and not *Mirandized*, and the issue was whether the statements were spontaneous or the product of police questioning. *Id.* *1. Like Burson, the defendant was talkative, the length of the interaction was similar, the officer was present in the room almost the entire time, and "many of the exchanges were initiated by [the defendant] and a few were initiated by the officers." *Id.* *2. The court found that "although certain questions beyond booking questions were asked by the officers, the officers were not engaged in an effort to interrogate [Defendant] or elicit admissions from him." *Id.* The court found many of the defendant's statements were spontaneous, including that he thought his test would "come out dirty." *Id.* *3-4. Nevertheless, the court did find during some of the exchanges the officer asked questions that elicited incriminating responses. *Id.* *5. The court identified these specific questions and the statements that were elicited, such as whether the defendant had taken an OUI test before, questions about where defendant was coming from, whether defendant had other alcohol-related offenses, and whether the defendant had been drinking beer or liquor, and suppressed those statements. *Id.* *5-6.

Throughout Defendant's interaction with Officer Cook, he was also talkative. Defendant initiated many of the exchanges, and Officer Cook initiated some. Although Officer Cook asked some questions beyond booking questions, he was not engaged in an effort to interrogate the Defendant or elicit admissions from him. Many of Defendant's statements were spontaneous and made after long periods of silence. These include statements about his truck, his clothes, that he couldn't believe what was happening, not wanting to spend his life "doing time," and who was driving the cop car that he ran into.

Many of Officer Cook's questions that went beyond booking questions were not and did not elicit incriminating information, such as his questions about the apartment rental in Lewiston, and Defendant's marriages and family. However, some of Officer

6

Cook's questions, even if they were not meant to elicit incriminating information are nevertheless problematic. The statements that shall be suppressed are the following:

- Defendant's response of "exactly" to Officer Cook's question as to how many intoxicated people rear-end a cop car; and
- Defendant's response of ".15" after Officer Cook asked him what he thought he would blow.
- The responses identified below as part of an exchange between Officer Cook and Defendant:

  Officer Cook: "So you had an OUI back in 2007."

  Defendant: "Yeah."

  Officer Cook: "Oh, you have a conditional license as well,

  Defendant: "yes"

  Officer Cook: "'till 2023"

  Defendant: "right"

  Officer Cook: "so you can't have any alcohol in your system period."

  Defendant: "Exactly"

Defendant argues that all of Defendant's statements after Officer Cook's statement of Defendant's prior OUI and conditional license should be suppressed as fruit of the poisonous tree. However, the fruit of the poisonous tree doctrine is inapplicable here. As in *Nelson*, the interchange between Officer Cook and Defendant was not continuous, and was punctuated by long periods of silence. *Nelson*, 2013 Me. Super LEXIS * 4-5. Defendant initiated most of the conversations. Immediately after the exchange regarding the prior OUI and conditional license, Defendant begins asking questions about bail. Thus, it is not the case where a Defendant was illegally interrogated and evidence was obtained *as a result* of that that interrogation. Rather, there are isolated responses to questions that must be suppressed, as noted above.

Defendant also seeks to suppress Defendant's statements of surprise about being in Topsham. Officer Cook initiated this conversation when he asked Defendant if he had anyone who could bail him out. Nothing about this initial question was an attempt to elicit incriminating information. Rather, it was an administrative question. Similarly, Officer's question about the distance to Limestone was administrative given it's bearing

7

on his initial question about having anyone to bail him out. By informing Defendant of where he actually was he was not attempting to elicit incriminating information. Rather, he was helping Defendant determine whether anyone could bail him out. Later, Defendant spontaneously states that he cannot believe he is in Topsham, and asks himself, out loud, where he was going. Officer Cook responds that "that is a good question," but does not ask Defendant where he was going. When Defendant states "Lewiston," Officer Cook's response of "Lewiston?" is a question about an ambiguous statement. Defendant answers "yes." The Court finds that none of this exchange was as a result of an interrogation, and accordingly is not suppressed.

Accordingly, Defendant's Motion to Suppress Defendant's statements is GRANTED as to the statements listed above, and DENIED as to all others.

The Clerk will incorporate this order by reference on the docket at the direction of the Court.

Date: _____1/25/17_____

Judge Beth Dobson
Maine District Court